(No. 19218.—■■■■■■■■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOHN DOE OF ROSEHILL CEMETERY COMPANY, Appellant.

*Opinion filed April 20, 1929.*

556

ASCHRAFT & ASCHRAFT, (CARROLL J. LORD, of counsel,) for appellant.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and ROY D. JOHNSON, (JOHN HOLMAN, EDWARD E. WILSON, and GEORGE A. CARMICHAEL, of counsel,) for the People.

Mr. CHIEF JUSTICE DEYOUNG delivered the opinion of the court:

By an information filed in the municipal court of Chicago John Doe of Rosehill Cemetery Company was charged with the violation of section 1*b* of the act entitled, "An act in relation to the control of public graveyards." (Laws of 1927, p. 195; Cahill's Stat. 1927, p. 214; Smith's Stat. 1927, p. 232.) The section reads as follows: "It is unlawful for a trustee or person in control of any cemetery or public graveyard in the State of Illinois to make or enforce a rule or by-law prohibiting the erection of headstones, approved by the United States government or by the State of Illinois, for the graves of soldiers, sailors or marines, who have served in the army or navy of the United States or of the State of Illinois; and any rule or by-law heretofore passed by any cemetery association, trustees, or persons having control of any cemetery, prohibiting the

erection of such headstones is void and of no effect. Any person, firm or corporation, seeking or attempting to enforce any such rule is guilty of a misdemeanor and upon conviction thereof shall be fined not less than ten dollars ($10) nor more than one hundred dollars ($100) for each offense." The *capias* was executed by arresting George D. VanPatten. He waived a trial by jury. The court found him guilty as charged and imposed a fine of $100 upon him. The invalidity of the statute which formed the basis of the prosecution was the defense interposed, and for that reason the defendant prosecutes an appeal directly to this court.

The facts are not in controversy. The Rosehill Cemetery Company was created by a private act of the General Assembly approved February 10, 1859. The act, among other things, authorized the managers of the company, and their successors, in the company's name, to purchase and hold real estate, at no time exceeding 500 acres, in the town of Lake View, in Cook county, for cemetery purposes; to dispose of burial lots on such terms and with such conditions for the permanent care and preservation of the cemetery, or any part of it, as they might agree upon with the purchasers, and to make such rules and regulations, from time to time, for the government of lot holders and visitors to the cemetery as they might deem necessary. Since its charter was granted the Rosehill Cemetery Company has acquired and now owns approximately 340 acres of land in that part of the city of Chicago formerly known as the town of Lake View. About 200 acres have been improved for burial purposes. Water pipes have been laid under the surface of the ground, walks and driveways have been provided, black soil has been placed on the surface and seeded, trees and shrubbery have been planted and buildings have been erected within the cemetery grounds. To improve and to beautify its property the company has expended large sums of money. Many lots in the improved sections of the

cemetery remain unsold and approximately 140 acres await future development.

Pursuant to authority granted by the company's charter, its board of managers from time to time adopted by-laws and regulations respecting the conduct and operation of the cemetery, the kind, dimensions and manner of setting grave-markers, headstones and monuments, the sale, care and improvement of burial lots and the rights and obligations of the purchasers of such lots. Among these by-laws and regulations are the following:

"In the new sections, grave-markers shall not exceed four or six inches in height when set, twenty-four inches in length for adults and twenty inches for children, and not less than six inches nor more than twelve inches in width. * * * In some sections markers must be set level with the ground."

"Markers should be set at least three feet from the monument, and where monuments are contemplated the company especially recommends low grave-markers, as high markers are detrimental to the appearance of the lot."

"All monuments or markers must be built of granite or standard bronze, and lot owners should not purchase stone until they ascertain whether the rules will permit its erection."

"Government headstones made of marble, which is perishable in this climate, will not be permitted except in the old sections, namely, B, C, D, E, F, G, H, I, J, M, N, O, P, 1, 2 and 4, and must be set in accordance with rules governing stones on the lot but in no case to exceed twelve inches in height. For permanency we strongly advise the use of granite only."

In the year 1890 the cemetery company conveyed a certain lot to one Carlson. The deed provided that the grantee, his heirs and assigns forever, should hold the lot as a place of interment, subject, however, to the provisions of the act by which the cemetery company was created and

to the rules and regulations then or thereafter adopted by the company in conformity with that act. The body of James L. Fleetwood, who in his lifetime was a soldier of the United States army, was buried in the lot so conveyed. Demand was made upon the cemetery company that a United States marble marker be permitted to be placed over Fleetwood's grave. The particular grave is located in a part of the cemetery where under the company's rules and regulations marble markers are prohibited. The desired permission was accordingly refused, and the arrest and prosecution of the appellant, one of the persons in control of the cemetery, upon the instant charge followed.

It appeared from the evidence that headstones furnished free of charge by the United States government for erection over the graves of soldiers and sailors are made of marble, and are thirty-four to thirty-six inches in height, about fourteen inches in width and two and one-half inches in thickness; that to avoid a partial burial of the inscription these headstones must be set more than twelve inches above the surface of the ground; that the headstones furnished by the government do not conform in size and shape to the headstones approved by the leading cemeteries of the country; that practically all of the larger and better cemeteries have adopted rules and regulations limiting the height of headstones; that certain cemeteries prescribe a maximum height of fifteen inches, others of six inches, and still others require their tops to be level with the ground; that apart from certain old sections of Rosehill Cemetery, enumerated in the by-laws, where marble government markers may be installed at a height not exceeding twelve inches above the ground, the rules and regulations of the Rosehill Cemetery Company fix six inches as the maximum height at which headstones may be set, while in some of the newer sections of the cemetery they must be so placed that their tops shall be level with the ground's surface; that in this climate marble readily absorbs moisture, and by reason of

successive expansion and contraction caused by heat and cold disintegration of the stone results; that by the action of the elements many of the marble headstones erected in the cemetery over the graves of soldiers of the Civil War have deteriorated to such an extent that the inscriptions upon them are completely obliterated; that granite headstones and monuments are not affected by the elements and that inscriptions upon them will remain legible perpetually; that no government headstones made of marble have ever been erected in the restricted sections of the cemetery; that to permit them to be placed in those sections would, because of their size and shape, and dilapidation resulting from deterioration, destroy the beauty of the landscape and depreciate the value of the unsold cemetery lots.

Upon the conclusion of the taking of the evidence the trial court, at the request of the appellant, made certain findings of fact. Among them was one that the erection of government headstones made of marble on the lots in Rosehill Cemetery from which by the company's by-laws marble headstones are excluded, would damage the company's property because the value of such of those lots as remained unsold would be depreciated and in consequence their sale prices would be reduced.

Appellant contends that the statute upon which the instant prosecution is based transcends the scope of the police power and attempts to exercise control over and to appropriate for public use, without compensation, purely private property which neither by its character nor use is harmful to the public or affected with a public interest, and that for these reasons the statute contravenes the constitution and is void. The police power is the power of the sovereign to legislate in behalf of the public health, morals or safety by general regulations reasonably adapted to the object in view without creating arbitrary discriminations between different classes of men or things. (Nichols on Eminent Domain, p. 53.) The authority of the State to enact laws

reasonably necessary to promote the general welfare comprehends a wide range of judgment and discretion in determining the matters which are of sufficient general importance to be subjected to State regulation and administration. (*Mountain Timber Co.* v. *Washington,* 243 U. S. 219; *City of Aurora* v. *Burns,* 319 Ill. 84.) With the growth and development of the State the police power necessarily develops, within reasonable bounds, to meet the changing conditions. (*Public Utilities Com.* v. *City of Quincy,* 290 Ill. 360.) The power is not circumscribed by precedents arising out of past conditions, but is elastic and capable of expansion in order to keep pace with human progress. (*City of Aurora* v. *Burns, supra.*) It is not a fixed quantity, but it is the expression of social, economic and political conditions. As long as these conditions vary the police power must continue to be elastic—*i. e.,* capable of development. The police power aims directly to secure and promote the public welfare, and it does so by restraint and compulsion. (Freund on Police Power, sec. 3.) Under that power, rights of property are impaired neither because they become useful or necessary to the public nor because some public advantage can be gained by disregarding them, but because their free exercise is believed to be detrimental to public interests. Freund on Police Power, sec. 511.

The natural right which every citizen possesses to use his property as he desires is necessarily subject to the limitation that such use shall not injure others. All uses of property or courses of conduct which are injurious to the public health, morals or safety may be prohibited by the State, although the exercise of the power may result in inconvenience or loss to individuals. In this respect individual rights must yield to the higher rights of the public. The power that the State may exercise in this regard is the overruling law of necessity and is founded upon the maxim *salus populi est suprema lex.* The existence and exercise

of this power are an essential attribute of sovereignty, and the establishment of government presupposes that the individual citizen surrenders all private rights the exercise of which would prove hurtful to the citizens generally. *Mugler* v. *Kansas,* 123 U. S. 623; *Haller Sign Works* v. *Training School,* 249 Ill. 436; *City of Chicago* v. *Rogers Park Water Co.* 214 id. 212.

Recognition of the foregoing principle, however, does not require that a statute, ostensibly enacted for the purpose of promoting the general welfare, must be accepted as a proper exercise of the police power of the State. That power has constitutional limits, and any measure enacted or adopted in its exercise, to be sustained, must bear some reasonable relation to the purposes for which the power may be exercised. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private rights. The legislative determination as to what is a proper exercise of the police power is not conclusive but is subject to review by the courts. (*City of Chicago* v. *Chicago and Northwestern Railway Co.* 275 Ill. 30; *Koy* v. *City of Chicago,* 263 id. 122; *People* v. *Elerding,* 254 id. 579; *Booth* v. *People,* 186 id. 43; *Lawton* v. *Steele,* 152 U. S. 133.) If the means employed have no real, substantial relation to public objects within the State's power, or if those means are arbitrary and unreasonable, the judiciary will disregard mere forms and interfere for the protection of rights injuriously affected by such illegal action. (*City of Aurora* v. *Burns, supra; Booth* v. *People, supra; People* v. *Robertson,* 302 Ill. 422; *Condon* v. *Village of Forest Park,* 278 id. 218; *Chicago, Burlington and Quincy Railway Co.* v. *Drainage Comrs.* 200 U. S. 561; *Minnesota* v. *Barber,* 136 id. 313.) Courts are concerned with the substance whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to promote the public welfare has no real or sub-

stantial relation to that object or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts so to adjudge, and thereby to give effect to the constitution. *Mugler* v. *Kansas, supra.*

The Rosehill Cemetery Company by the provisions of its charter was authorized to purchase and hold land, not exceeding a certain quantity, and to use it for cemetery purposes. The General Assembly, notwithstanding the franchises granted the cemetery company, has the power to regulate the manner of the use of its property so far as such use may injuriously affect others. The State may not, however, under the guise of making police regulations, deprive the company of any of the essential rights conferred by its charter. *Town of Lake View* v. *Rosehill Cemetery Co.* 70 Ill. 191.

The act under review does not profess to correct any abuse in the use of cemetery property. There is no pretense that Rosehill Cemetery, as maintained and operated, constitutes a nuisance, or that it in the slightest degree menaces the health or general well-being of the community in which it is located. The act admittedly is not the expression of any legislative effort to safeguard the public health or to promote the general welfare.

The adoption of the by-law which excluded marble headstones, without discrimination, from the newer sections of the cemetery was a valid exercise of a power previously delegated to the cemetery company by the State. Such headstones were so excluded because by the action of the elements they deteriorated and their inscriptions became obliterated.

The trial court expressly found that the erection of marble headstones like the one requested, in the restricted portions of Rosehill Cemetery, would damage the property of the cemetery company by depreciating the value of the unsold lots. The testimony supporting this finding was not

contradicted. Hence the act in question not only disturbs the cemetery company in the control of its property for lawful purposes but also deprives it of property without due process of law. The act is therefore unconstitutional and void.

The judgment of the municipal court of Chicago is reversed.

*Judgment reversed.*