(Nos. 57919, 57920 cons.—

FIRESIDE CHRYSLER-PLYMOUTH, MAZDA, INC., *et al.*, Appellees, v. JIM EDGAR, Secretary of State, *et al.*, Appellants.

*Opinion filed April 19, 1984.—Rehearing denied June 4, 1984.*

SIMON and UNDERWOOD, JJ., dissenting.

Neil F. Hartigan, Attorney General, of Springfield (Imelda R. Terrazino, Assistant Attorney General, of Chicago, of counsel), for appellant.

Thomas G. Lyons and Dennis M. O'Keefe, of O'Keefe, Ashenden, Lyons & Ward, of Chicago, for intervening appellants.

Gordon and Gordon, Ltd., of Chicago (Gilbert W. Gordon and Robert E. Gordon, of counsel), for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Jim Edgar, Secretary of State, and intervening defendants, Chicago Automobile Trade Association and the Illinois New Car and Truck Dealers Association, appeal from the judgment of the circuit court of Cook County holding unconstitutional section 5—106 of the Illinois Vehicle Code (Ill. Rev. Stat., 1982 Supp., ch. 95½, par. 5—106). Section 5—106 was added to the Vehicle Code by Public Act 82—788, effective January 1, 1983 (1982 Ill. Laws 1258), and in pertinent part provides that:

"No person licensed under Sections 5—101 [new vehicle dealers] and 5—102 [used vehicle dealers] may keep open, operate, or assist in keeping open or operating any established place of business for the purpose of buying, selling, bartering or exchanging, or offering for sale, barter or exchange, any motor vehicle, whether new or used, on the first day of the week, commonly called Sunday; ***." Ill. Rev. Stat., 1982 Supp., ch. 95½, par. 5—106.

Plaintiffs are corporations licensed by the Secretary of State to sell automobiles. They filed a complaint seeking an order declaring section 5—106 of the Vehicle Code to be unconstitutional and void and an order enjoining defendant Secretary of State from enforcing it. Joseph W. Longo was given leave to intervene as an intervening plaintiff, but the record contains no pleadings filed on his behalf. In one of the briefs he is described as "an Illinois resident and a consumer," but the nature of his interest in the litigation cannot be determined.

Chicago Automobile Trade Association and the Illinois New Car and Truck Dealers Association were given leave to intervene as defendants. Defendant Secretary of State and the intervening defendants filed motions to dismiss plaintiffs' complaint, and the plaintiffs moved for summary judgment. The circuit court found that section 5—106 constituted "special legislation in violation of article IV section 13 of the Constitution of the State of Illinois," that it denied

plaintiffs equal protection of the law "as guaranteed by the Constitution of the United States" and was unconstitutional and void. Because defendant Secretary of State agreed that there would be no attempt to enforce the statute pending appeal, no injunction was ordered. Defendant Secretary of State and the intervening defendants appealed directly to this court (Rule 302(a), 87 Ill. 2d R. 302(a)).

The Constitution of 1970 provides:

> "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, sec. 13.

Plaintiffs contended in the circuit court, and argue here, that the statute is special legislation in violation of article IV, section 13, and denies them equal protection of the law in violation of the fourteenth amendment to the Constitution of the United States. They argue that the General Assembly "cannot single out auto dealers for a Sunday closing law" and that there is no reasonable basis for the separate classification of automobile dealers to require them to remain closed on Sunday. Defendants contend that section 5—106 is not special legislation, does not create an unreasonable classification, and that plaintiffs have failed to overcome the presumption of the reasonableness of the classification. They argue too that the statute adds a reasonable restriction to "a compendium of rules" which specifically governs a class licensed to engage in the sale of automobiles.

In *Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, the court said:

> "Special legislation confers a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated. (*Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 109-110.) It arbitrarily, and without a sound, reasonable basis, discriminates *in favor of* a select group. Such legislation differs from 'local laws' because it is not limited to a geographical portion of the State. (*Bridgewa-*

*ter v. Hotz* (1972), 51 Ill. 2d 103, 109; G. Braden & R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 206 (1969).) Special legislation differs from a violation of equal protection in that the latter consists of arbitrary and invidious discrimination *against* a person or a class of persons. It results from the governmental withholding of a right, privilege or benefit from a person or a class of persons without a reasonable basis (or, where a fundamental right or suspect classification is involved, a compelling State interest) for doing so. Whether a law is attacked as special legislation or as violative of equal protection, it is still the duty of the courts to decide whether the classification is unreasonable in that it preferentially and arbitrarily includes a class (special legislation) to the exclusion of all others, or improperly denies a benefit to a class (equal protection). (See *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 315.)" 83 Ill. 2d 130, 137-38.

Plaintiffs contend that the presumption of constitutionality has been rebutted and that this court's earlier decision in *Courtesy Motor Sales v. Ward* (1962), 24 Ill. 2d 82, requires affirmance of the judgment. In *Courtesy,* the court held invalid as violative of article IV, section 22, of the 1870 Constitution (Ill. Const. 1870, art. IV, sec. 22) a statute requiring automobile dealers to close on Sunday. The court said:

"The need for observing Sunday as a day of rest is not unique to those engaged in selling automobiles, nor can we see any way in which the purpose of a Sunday law is promoted by prohibiting such activity that is not equally present in a prohibition of other businesses." 24 Ill. 2d 82, 86.

The fact that a similar statute was held unconstitutional in *Courtesy* does not require that it be held unconstitutional now. In *Fenske Brothers, Inc. v. Upholsterers International Union of North America* (1934), 358 Ill. 239, 250-51, the court said:

"It is well settled that the legislature may, in the exercise of the police power of the State, enact those measures which have a tendency to promote the public comfort, health, safety, morals or welfare of society. (*Massie v.*

*Cessna,* 239 Ill. 352; *Condon v. Village of Forest Park,* 278 id. 218.) The police power is considered capable of development and modification within certain limits, so that the powers of governmental control may be adequate and meet changing social and economic conditions. The power is not circumscribed by precedents arising out of past conditions but is elastic and capable of expansion in order to keep pace with human progress. It is not a fixed quantity, but it is the expression of social, economic and political conditions. (*People v. Rosehill Cemetery,* 334 Ill. 555; *Public Utilities Com. v. City of Quincy,* 290 id. 360.) In the exercise of this power the legislature may enact laws regulating, restraining or prohibiting anything harmful to the welfare of the people, even though such regulation, restraint or prohibition interferes with the liberty or property of an individual. Neither the fourteenth amendment to the Federal constitution nor any provision of the constitution of this State was designed to interfere with the police power to enact and enforce laws for the protection of the health, peace, morals or general welfare of the people. *Powell v. Pennsylvania,* 127 U.S. 678, 31 L. ed. 253; *People v. Anderson,* 355 Ill. 289; *Town of Cheney's Grove v. VanScoyoc,* 357 id. 52."

In recent years the General Assembly has enacted a number of statutes which pertain only to automobile dealers. Included are a scheme for the licensing of new and used vehicle dealers (Ill. Rev. Stat. 1981, ch. 95½, pars. 5—101, 5—102), the Motor Vehicle Retail Installment Sales Act (Ill. Rev. Stat. 1981, ch. 121½, par. 561 *et seq.*), the Motor Vehicle Franchise Act (Ill. Rev. Stat. 1981, ch. 121½, par. 751 *et seq.*), and the New-Car Buyer Protection Act (Pub. Act 83—768, effective January 1, 1984) (1983 Ill. Laws 4450). It has imposed on automobile dealers and other persons involved with the automotive industry record-keeping requirements not required of many retailers. See Ill. Rev. Stat. 1981, ch. 95½, par. 5—401.

These statutes demonstrate a legislative purpose to regulate certain aspects of the business of selling automobiles in a manner different from other retail enterprises. The statute

here involved is part of the regulatory scheme and, as the court said in *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, "[w]hether the course chosen is wise or whether it is the best means to achieve the desired result is not a proper subject of judicial inquiry" (51 Ill. 2d 103, 111). Plaintiffs have not overcome the presumption that the classification is reasonable, and the judgment of the circuit court is reversed. The cause is remanded to the circuit court of Cook County with directions to dismiss the complaint.

*Judgment reversed;*
*cause remanded,*
*with directions.*

JUSTICE SIMON, dissenting:

This case being before us on appeal from the entry of summary judgment in favor of the plaintiffs, I believe the proper disposition under the majority's view would be a remand to the trial court to permit the plaintiffs to develop evidence to rebut the presumption raised by the majority "that the classification is reasonable" (102 Ill. 2d at 7), rather than outright dismissal of their complaint without adjudication of any facts. However, my view is that the Sunday closing law is unconstitutional on its face, and I would affirm the judgment of the circuit court which held it to be so.

The question presented here was decided in *Courtesy Motor Sales v. Ward* (1962), 24 Ill. 2d 82, in which a nearly identical Sunday closing law was, without dissent, declared unconstitutional. The majority opinion virtually ignores the holding of that case, relying only on the maxim that " '*** [t]he [police] power is not circumscribed by precedents arising out of past conditions but is elastic and capable of expansion in order to keep pace with human progress' " (102 Ill. 2d at 6, quoting from *Fenske Brothers, Inc. v. Upholsterers International Union of North America* (1934), 358 Ill. 239, 250-51) and the observation that numerous statutes regulating automobile dealers have been passed in this State since *Courtesy Motor* was decided. However, it has long been the

law in this State that "[t]he court must be able to see, in order to hold that a statute or ordinance comes within the police power, that it tends in some degree toward the prevention of offenses or the preservation of the public health, morals, safety or welfare. *** If it is manifest that the statute or ordinance has no such object but under the guise of a police regulation is an invasion of the property rights of the individual, it is the duty of the court to declare it void." (*People v. Weiner* (1915), 271 Ill. 74, 78-79; see *People v. Johnson* (1977), 68 Ill. 2d 441, 446.) Moreover, the circumstances relied on here are not sufficiently different from those in *Courtesy Motor* to warrant departing from the law clearly set forth 22 years ago in that case, and no new or independent justification for the Sunday closing act has been identified by the majority opinion.

The statute which this court examined in *Courtesy Motor* made it a crime to "keep open *** any place or premises *** for the purpose of buying, selling bartering or exchanging *** any motor vehicle *** on the first day of the week, commonly called Sunday. ***" (Ill. Rev. Stat. 1961, ch. 121½, par. 282.) This court struck down this provision as special legislation (Ill. Const. 1870, art. IV, sec. 22) because it did not apply to any forms of activity other than the sale or exchange of automobiles and no interest of the State was reasonably served by applying a Sunday closing law to so limited a range of activity. The court noted that "the basic purpose of Sunday closing laws is to 'provide a uniform day of rest to all citizens' " (*Courtesy Motor Sales v. Ward* (1962), 24 Ill. 2d 82, 87, citing *McGowan v. Maryland* (1961), 366 U.S. 420, 445, 6 L. Ed. 2d 393, 410, 81 S. Ct. 1101, 1115) and responded in the following way to the contention, also advanced by those supporting the statute in this case, that special circumstances justified the special legislation:

"Defendants and the *amici* argue that the automobile sales industry has many characteristics which distinguish it from other businesses, that *numerous aspects of modern*

*life relating only to the automobile, its use, operation or
sale have been the subject of special legislative attention,*
and that it would not be realistic to hold arbitrary legisla-
tion classifying motor vehicle dealers separately and apart
from merchants in general. This argument misconceives
the issue here. *The question is not simply whether automo-
bile dealers may be classified separately for the purpose of
legislation. It is whether they may be classified separately
for the purpose of a Sunday closing law."* (Emphasis
added.) 24 Ill. 2d 82, 87.

*Stare decisis* applies in principle to the exercise of the
police power in the same way it does to any other kind of
case. The police power, however, is a response to circum-
stances, and what may be done under that power depends
on the circumstances to be met; a law needed to correct a
new evil may be valid although the same law when no such
evil existed was not. Thus, in considering the value of an old
precedent in deciding whether the police power was prop-
erly exercised, it is in point to ask what circumstances have
changed.

The majority does not explicitly overrule *Courtesy Motor*
or even find fault with its reasoning. It grounds its different
result, apparently, on what it considers to be altered circum-
stances. Yet what has changed since that decision was ren-
dered? Not the statute: the only difference is that the one we
are called upon to consider here, unlike its predecessor, ap-
plies only to "person[s] licensed [to sell automobiles] under
Sections 5—101 and 5—102" and concerns only "established
place[s] of business" (Ill. Rev. Stat., 1982 Supp., ch. 95½,
par. 5—106) rather than "any place or premises or resi-
dences" (Ill. Rev. Stat. 1961, ch. 121½, par. 282), a change
which, if anything, renders the current statute more rather
than less susceptible to challenge as special legislation inas-
much as it appears to favor unlicensed or home dealers at
the expense of organized dealerships. The applicable consti-
tutional provision has not changed: now as then it prohibits
the passage of a special law where a general law is or can be

made applicable. (Compare Ill. Const. 1970, art. IV, sec. 13, with Ill. Const. 1870, art. IV, sec. 22.) This court has already determined that the 1970 Constitution did not change the special legislation prohibition in any substantive way. *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 109-10.

The majority's explanation for upholding this Sunday closing law appears in the final paragraph of the opinion. In the preceding paragraph, the majority refers to the following statutes regulating automotive dealers enacted after the *Courtesy Motor* decision in 1962: (i) a law requiring that sellers of new and used cars be licensed and comply with the provisions of the applicable occupation tax act as a prerequisite for doing business in this State (Ill. Rev. Stat. 1981, ch. 95½, pars. 5—101, 5—102), (ii) laws requiring such dealers, as well as used parts dealers and scrap processors, to keep detailed records of all parts acquired or used, including their serial numbers or absence thereof (Ill. Rev. Stat. 1981, ch. 95½, pars. 5—401, 5—401.1), (iii) legislation concerning credit and collection provisions in installment sales contracts (Ill. Rev. Stat. 1981, ch. 121½, par. 561 *et seq.*), (iv) legislation defining and providing remedies for illegal coercive or restrictive practices between auto manufacturers, manufacturer's representatives and dealers in the awarding and termination of franchises and in providing franchises with inventory (Ill. Rev. Stat. 1981, ch. 121½, par. 751 *et seq.*), and (v) a recent enactment, sometimes referred to as the "lemon law," which provides for mandatory replacement of a new car or return of its purchase price if a reasonable number of attempts to repair it or make it conform to its express warranties are unsuccessful (Pub. Act 83—768, eff. Jan. 1, 1984) (1983 Ill. Laws 4450). After referring to these statutes and record-keeping requirements imposed on the automotive industry, but "not required of many retailers," the majority opinion states:

> "These statutes demonstrate a legislative purpose to regulate certain aspects of the business of selling automobiles in a manner different from other retail enterprises.

The statute here involved is part of the regulatory scheme
***." (102 Ill. 2d at 6-7.)

However, the majority opinion is barren of any support
for its assertion that the Sunday closing requirement is a
part of a regulatory scheme, and it fails to demonstrate in
any manner how Sunday closing is useful or serves any pur-
pose in furthering any regulatory scheme imposed upon au-
tomobile sales or in facilitating the record keeping required
of dealers. While the defendants argue that Sunday closing
is a reasonable restriction added to a compendium of regula-
tions which govern a class licensed to engage in the sale of
automobiles, they do not explain how closing down automo-
bile showrooms on Sunday is required or assists in enforcing
these regulatory measures or is in any way related to them,
and neither does the majority opinion. It is significant to
note that used-parts dealers, scrap processors, automotive-
parts recyclers, and rebuilders must also be licensed under
chapter 5 of the Illinois Vehicle Code and must maintain the
same records as new- and used-vehicle dealers (Ill. Rev.
Stat. 1981, ch. 95½, par. 5—301), but the Sunday closing
law does not apply to them even though they purchase auto-
mobiles and buy and sell used parts. A Sunday closing law
might be understandable if there were some intrinsic link
between the interests underlying the existing regulations
and the need to close licensed dealerships on Sunday, so that
it could be said that the closing requirement is part of an
integrated scheme which was not in place when *Courtesy
Motor* was decided, or at least that it might somehow facili-
tate efficient and evenhanded enforcement of new regula-
tions. The majority, however, does not even attempt to detail
any such connection, none is advanced by the defendants'
briefs, and none is conceivable to me.

The laws on which the majority relies to show that the
automobile business has become the subject of additional
State regulations demonstrate at most a legislative purpose
to regulate certain aspects of the sale of automobiles, moti-
vated by an awareness, perhaps, that the business is peculi-

arly rife with dishonest or coercive trade practices and particularly susceptible to product failure after sale and that stolen automobile parts are a lucrative source of income for organized crime. A Sunday closing requirement has nothing to do with any of these concerns, and nothing in the record before us shows that any of these problems will be better controlled by closing automobile showrooms on Sunday. There is therefore nothing in the majority opinion which satisfactorily explains the court's decision to abandon *Courtesy Motor* as precedent or its reluctance to come to grips with the justification for the Sunday closing law in its present context.

The statute identifies by name a particular trade for which it establishes a special rule which on its face has nothing in particular to do with that trade as compared with the large number of other businesses which are open on Sundays. This is special legislation on its face. The defendants argue that it is not as a definitional matter because it does not confer a benefit or a privilege on any class, but at most places a restraint on the class. *Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130. However, *Courtesy Motor* explicitly held otherwise; it disposed of the predecessor of the present law solely on the ground that it was special legislation, saying:

> "The present statute, which singles out only one activity or occupation to which this day of rest shall apply, is a special law within the meaning of section 22 of article IV of the Illinois constitution." (*Courtesy Motor Sales v. Ward* (1962), 24 Ill. 2d 82, 87-88.

The conclusion reached in *Courtesy Motor* was sound. Heretofore an automobile dealer, like anyone else, could choose to close on Sunday, but he had to accept the loss of business that might result. Customers who wanted to shop for cars on Sunday were free to patronize dealers who stayed open. Under the present law, however, the auto dealer who wishes to close on Sunday may defy the interest of purchasers and serve only his own, with the assurance

that the law prevents his competitors from gaining any advantage by doing otherwise. The statute supplies a legislatively mandated respite from competition. The desire of some dealers to close on Sundays is placed, by law, above the liberty of other dealers to pursue a useful and harmless business to their own best advantage by serving the shopping public in the way the public wants to be served. Dealers who wish to close on Sundays are also placed, by law, above the liberty of the buying public to shop for automobiles at its own convenience. This takes place only in the automobile business and not in the case of the thousands of other retail sellers in the State of Illinois who are open on Sunday—stores in shopping malls, department stores, discount stores, furniture stores, boat sellers, airplane dealers, motorcycle and bicycle sellers, and other sellers of nonessential commodities.

Were automobile dealers to attempt to accomplish this result by agreeing with their competitors to close on Sundays, it is unlikely that enough would go along to make the effort successful. Besides, the participants might be charged with conspiring to restrain trade. Accomplishing this result by having the legislature legitimize it is much more convenient and also safer. This law not only gives automobile dealers special practical benefits and imposes special burdens on automobile purchasers, but it is, in addition, inconsistent with the antitrust policy of free and open competition. Because this legislation applies only to the automobile business with no showing of any practical need to limit it to that business, it is special legislation.

The majority's contention is that the law is constitutional because the automobile trade is a reasonable classification. But a reasonable classification for what? The special legislation prohibition requires active judicial review of classifications created by the legislature that confer a special benefit on a particular group, and such classifications should receive little deference in determining whether they are merely ave-

nues for providing special benefits. (See Karasik, *Equal Protection of the Law Under the Federal and Illinois Constitutions: A Contrast in Unequal Treatment*, 30 De Paul L. Rev. 263, 280 (1981).) There must be a "sound, reasonable basis [for] discriminat[ing] in *favor* of a select group." (*Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, 137-38.) A legislative classification cannot be upheld unless it is a reasonable way of furthering a legitimate legislative purpose.

The majority states that the statutes which it cites "demonstrate a legislative purpose to regulate certain aspects of the business of selling automobiles in a manner different from other retail enterprises." (102 Ill. 2d at 6.) There must, however, be some useful and permissible purpose for each specific legislative classification other than a naked intent to confer a benefit or impose a burden upon a particular class. The fact that proper regulations designed to cure problems in the business of selling automobiles have been enacted does not make it open season for the legislature to impose any type of regulation it wishes on automobile dealers even though it bears no relationship to other regulations which have been imposed for a proper purpose, does nothing to facilitate the enforcement of those regulations, and has no independent justification. There is no reasonable basis for the majority's conclusion that the separate classification of automobile dealers is proper when the sole effect of the classification is, as in this case, to suppress competition between automobile dealers on Sunday, an obviously improper legislative purpose. For these reasons, the present statute, like the statute considered in *Courtesy Motor*, is special legislation.

A special law is improper under article IV, section 13, of our constitution if a general law is or can be made applicable, and the Constitution requires a reasonable attempt to make the law as general as possible. Special legislation, unlike alleged denials of equal protection, cannot be justified on the theory that the legislature may take one step at a time.

If a general law can be made applicable, the legislature may not experiment with a special law instead. (*Grace v. Howlett* (1972), 51 Ill. 2d 478, 487; *Wright v. Central Du Page Hospital Association* (1976), 63 Ill. 2d 313, 329; *People ex rel. East Side Levee & Sanitary District v. Madison County Levee & Sanitary District* (1973), 54 Ill. 2d 442, 447.) It is obvious that a general law which applies to all other pursuits, occupations and businesses in Illinois can be made applicable to the retail automobile business, as this court held in *Courtesy Motor*.

The Secretary of State's brief explains the reason for the law more fully and more openly than the majority opinion does. It argues that the statute is required for economic reasons. First, it states that the automobile sales business is intensely competitive and that those in it compete at least partly on the basis of service, so that one seller's ability to remain open at all times—particularly on weekends when much of the actual purchasing is done—determines his share of the available market and, apparently, his profitability. His brief asserts that the resulting pressure on the employees of such sellers to report to work seven days a week is itself inimical to the public welfare, although nothing in the record documents the assertion that those employed by automobile dealers are required to work seven days a week. The Secretary of State also argues that the industry is suffering from severely depressed economic conditions which, when combined with the high cost of staying open seven days a week, threaten the survival of many automobile dealers. Therefore, it reasons, a Sunday closing law which is designed to ameliorate the damaging effects of dealers' mutual competition is necessary to assure the continued financial viability of the industry.

Even if this rationale were a convincing ground for treating automobile dealers differently from the rest of the economy, I would be unwilling to rule here as the majority does for the reason that this court has in *Courtesy Motor* already

unanimously decided the legal question here presented adversely to the State. To the extent that the current version of the statute is represented to us as a response to a recession in the economy that did not exist in 1962, it is difficult to understand the eagerness of the intervening trade associations to continue to defend it in the face of an article in an automotive trade journal, placed in evidence by the plaintiffs and unrebutted by the defendants, which recites statistics showing that sales of new cars reached a four-year record high in June 1983. (*Domestic-car sales jump 47 pct.*, Automotive News, July 11, 1983, at 69, col. 1.) It is common knowledge that there has been further improvement in automobile sales since last June. See *Car sales up 73%; best since '73*, Chicago Sun-Times, February 24, 1984, at 79, col. 1.

There is not sufficient rationality in the legislative scheme to save it under the arguments advanced by the defendants. The recession cited by the defendants, if it exists at all, is economy-wide, unlike the statute we are called upon to examine. When this statute was enacted, almost all retail sales were declining because of a weak economy. High interest rates and widespread unemployment had the same effect on the sale of television sets, furniture, boats, motorcycles, bicycles, and washing machines as they had on the sale of automobiles. This is not a reason for validly asserting a separate classification for automobile dealers.

Defendants in their oral argument, although not in their briefs, appeared to grasp for an explanation for the law by suggesting that since the Secretary of State's office is closed on Sundays, it would be impossible for a dealer or a customer to check the title of an automobile or report an improper sales practice should any occur on Sunday. Obviously this is a contrived argument, for State offices are closed on Saturdays and many holidays as well as Sundays, while auto dealers are free to ply their trade on all days other than Sunday. The uselessness of a Sunday closing law in regard

to any interest the State might have in facilitating the reporting or tracing of irregularities is apparent from the fact that a sale which occurs on a Saturday or a Friday evening must go unreported twice as long as one which occurs on a Sunday.

Finally, I am concerned with the legitimacy of what the Secretary of State appears to admit is the real reason for the Sunday closing law in this case, to increase the profitability of the automobile sales business by decreasing competition and reducing the availability of its product. As I have indicated, I view the law as having the effect of reducing purchasers' options, denying them the opportunity to buy cars on the day consumers are most free to shop around with their families, thereby forcing them to postpone their purchases or channeling their demand to other days of the week and to those dealers which are most readily accessible to the family on a workday.

In whatever terms the law is viewed, the law's effect and intent are in conflict with the "legislative judgment in favor of competition" which is expressed by the Congress in the national antitrust laws (Givens, Antitrust: An Economic Approach sec. 2.01, at 2–6 (1983); see *National Society v. United States* (1978), 435 U.S. 679, 695, 55 L. Ed. 2d 637, 652, 98 S. Ct. 1355, 1367; *Standard Oil Co. v. Federal Trade Com.* (1951), 340 U.S. 231, 248-49, 95 L. Ed. 239, 250-51, 71 S. Ct. 240, 249; *United States v. Trenton Potteries Co.* (1927), 273 U.S. 392, 397, 71 L. Ed. 700, 705, 47 S. Ct. 377, 379). The unconcealed restraint the statute places on purchasers as well as on those dealers who wish to remain open on Sundays strikes at the heart of Congress' "assumption that competition is the best method of allocating resources in a free market [which] recognizes that all elements of a bargain—quality, service, safety, and durability—and not just the immediate cost, are favorably affected by the free opportunity to select among alternative offers" (*National Society v. United States* (1978), 435 U.S. 679, 695, 55

L. Ed. 2d 637, 652, 98 S. Ct. 1355, 1367). The law which the majority has upheld is for this reason inconsistent with the public policy of both our nation and our State. By abetting such a restraint on competition by legislation promulgated in the name of the economic welfare of its citizens, I submit that the State has gone beyond the permissible scope of its police power.

JUSTICE UNDERWOOD joins in this dissent.