DAVID E. SHELTON PRODUCTIONS, INC., d/b/a Medusa's, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.,* Defendants-Appellees.

First District (2nd Division)   No. 87—1495

Opinion filed March 1, 1988.

Kugler, DeLeo & D'Arco, of Chicago, for appellant.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

This case presents a challenge to an amended Chicago ordinance barring so-called juice bars from operating during certain early morning hours. Plaintiff sued for a permanent injunction and a declaratory judgment that the amended ordinance is unconstitutional. The circuit court denied plaintiff's motion for a temporary restraining order and its subsequent motion to reconsider such denial. After a hearing, the court issued an order granting the defendants' motion to dismiss the plaintiff's complaint with prejudice. (Ill. Rev. Stat. 1985, ch. 110, par. 2—615.) Plaintiff appeals from that order.

Plaintiff operates a juice bar known as Medusa's, which sells non-alcoholic beverages and affords its patrons the opportunity to socialize, dance and watch videotapes. The business obtained a "Class 2 Public Place of Amusement" (PPA) license in 1983 and began operations at its present location in the middle of that year. The Class 2 license was renewed in the years 1984 through 1987.

Chapter 104.1—7 of the Chicago Municipal Code defines a Class 2 PPA as follows:

> "Amusement park, hall, billiard and pool room, bowling alley, arcade (or other public resort) exclusive of such parts thereof as fall within Class 1 places of amusement, designed, used or intended to be used only for participation or entertainment by the public assembly." Chicago Municipal Code, §104.1—7 (1986).

Plaintiff held three events weekly at its establishment. On Friday and Saturday nights, there was a dance for adults which began at 11 p.m. and lasted until 6 a.m. the next morning. The other event was a teen dance on Saturday evenings from 6:30 p.m. to 10:30 p.m.

After the licensing committee of the Chicago city council held public hearings in response to neighborhood complaints about juice bars, the city council passed an ordinance regulating the hours of operation of juice bars. In the preamble to that ordinance the council stated that "[t]he presence of large numbers of patrons, both within such establishments and on the public ways outside of such establishments during the early hours of the morning have created a great disturbance to the citizens of Chicago," and "[t]he presence of patrons, many of whom may be under the age of curfew, in such establishments impedes the effectiveness of the curfew regulations of the City and exposes young people to the danger of crime and exploitation." Chicago Municipal Code, §104.1 (1987).

On January 16, 1987, the Chicago city council amended section 104.1—7 of the Municipal Code by creating a Class 4 PPA license as follows:

"Any dance hall, non-alcohol bar, 'dry cabaret,' 'juice bar,' 'teen-age cabaret' or other public resort not listed above which is designed, used or intended to be used primarily for participation by the public assembly in the entertainment or amusement, including but not limited to music, music videos and dancing. This class should not include any establishment which is licensed to serve alcoholic beverages." (Chicago Municipal Code, §104.1—7 (1987).)

Simultaneously, the council also added subsection 104.1—18.1, which provides that Class 4 PPA's may *not* operate between 2 a.m. and 7 a.m. (Chicago Municipal Code, §104.1—18.1 (1987).) The subsection further provides that such an enterprise may remain open until 5 a.m. on Sundays and 4 a.m. on other days upon payment of an additional fee of $734 and, if the business is in a residential area, the written consent of the majority of registered voters who live within 400 feet of the establishment. As a result of the creation of the Class 4 PPA, plaintiff's Class 2 license was automatically transformed into a Class 4 PPA.

The effective date of the amended ordinance was April 1, 1987, on which date the plaintiff filed its complaint seeking a permanent injunction and declaratory judgment that the amendments were unconstitutional, and presented a motion for a temporary restraining order. That same day the circuit court denied plaintiff's motion and thereafter denied its emergency motion for reconsideration. During a hearing on April 16, 1987, the court granted the defendants' motion to dismiss the complaint, from which the plaintiff appeals.

Opinion

I

■ The plaintiff argues that the restrictions placed by the city on Class 4 PPA licenses are unconstitutional zoning restrictions of purported nuisances. It claims its business does not constitute a nuisance and that the amended PPA ordinance does not have a real and substantial relationship to the public health, safety, morals, or general welfare. (*Chicago Title & Trust Co. v. Village of Skokie* (1978), 60 Ill. App. 3d 221, 232, 376 N.E.2d 313; *La Salle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944, 949, 369 N.E.2d 1363.). The defendants respond that the amended ordinance is not a zoning provision at all, but rather one which regulates licenses. It seems quite clear, however, that the ordinance definitely pertains to licensing because it regulates establishments based on the type of business they

conduct, irrespective of their location. Therefore, the principles of law pertaining to nuisances are inapplicable in the instant case.

The defendants cite ample authority for the city to regulate licenses. (*Vaden v. Village of Maywood* (7th Cir. 1987), 809 F.2d 361, 365, *cert. denied* (1987), ___ U.S. ___, 96 L. Ed. 2d 381, 107 S. Ct. 2489; *Fireside Chrysler-Plymouth, Mazda, Inc. v. Edgar* (1984), 102 Ill. 2d 1, 464 N.E.2d 1275, *appeal dismissed* (1984), 469 U.S. 926, 83 L. Ed. 2d 254, 105 S. Ct. 316; *Village of Caseyville v. Cunningham* (1985), 137 Ill. App. 3d 186, 189-90, 484 N.E.2d 499.) Several of these cases involve factual situations similar to the one we encounter here. For example, in *Vaden* the Seventh Circuit rejected a challenge to an ordinance restricting the hours and locations of mobile food vendors on the ground that the ordinance was rationally related to a legitimate governmental interest. (*Vaden,* 809 F.2d at 365.) For the same reason our State supreme court in *Fireside* upheld a State statute prohibiting automobile dealerships from being open for business on Sundays. *Fireside,* 102 Ill. 2d at 7.

■ Case law, therefore, is well established that a constitutional licensing regulation must have a rational relationship to a legitimate governmental interest. (*Vaden,* 809 F.2d at 364; *Krebs v. Thompson* (1944), 387 Ill. 471, 56 N.E.2d 761.) The preamble to the subject ordinance clearly delineates the problems the city council was attempting to alleviate by adopting it, and there can be no doubt that we are permitted to take the preamble into account when ascertaining the goals of the legislative body. (*Geri's West, Inc. v. Ferrall* (1987), 153 Ill. App. 3d 579, 583, 505 N.E.2d 1348; *Radford v. Cosmopolitan National Bank* (1964), 52 Ill. App. 2d 240, 248, 201 N.E.2d 622.) Foremost among the problems identified by the city council were the "great disturbance" alleged to have been caused by individuals as they were leaving these establishments and violations of the curfew laws by many of the patrons of juice bars. Certainly the creation of the Class 4 PPA license with its concomitant restrictions is a legitimate method by which to attack these problems. While courts may choose a different approach to remedy the harms caused by such establishments as juice bars, their inquiry, as we have already observed, is necessarily limited to the question of whether a regulatory ordinance is rationally related to a legitimate goal. (*Fireside,* 102 Ill. 2d at 7; *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 111, 281 N.E.2d 317.) Accordingly, we find that there is the requisite relationship between the ordinance at issue and the city council's legitimate objectives.

## II

■ Plaintiff cites voluminous authority which it claims supports the proposition that the ordinance here is an unconstitutional delegation of the Chicago city council's authority because it allows neighboring voters to regulate a business. The defendants respond by referring the court to almost as many cases which they contend demonstrate that the legislature may delegate to certain electors the power to waive restrictions on commercial activity in their area.

The plaintiff relies most heavily on *Regner v. County of McHenry* (1956), 9 Ill. 2d 577, 138 N.E.2d 545, wherein the county adopted an ordinance which prohibited the leasing of fishing boats or the operation of a fishing resort. The circuit court held that the ordinance validly regulated the use of the plaintiff's land, even though the county had considered the fears and desires of neighboring residents in passing the ordinance. The plaintiff maintains that the supreme court in *Regner* invalidated the ordinance because it restricted the use of property based on the desires of neighboring property owners. However, the court's holding is broader than the interpretation given by the plaintiff, for the *Regner* court indicated that "[t]o be a valid exercise of power, a zoning restriction must have some rational connection with the promotion of public health, safety, morals, or welfare. We can see none here." (*Regner*, 9 Ill. 2d at 582.) Our case is therefore distinguishable from *Regner* on two grounds: first, the instant case, unlike *Regner*, does not involve zoning; and second, the ordinance at bar is rationally related to promoting the public welfare. See *Vaden*, 805 F.2d at 365.

The only other Illinois Supreme Court case cited by the plaintiff is *Drovers Trust & Savings Bank v. City of Chicago* (1960), 18 Ill. 2d 476, 165 N.E.2d 314. In *Drovers*, the challenged ordinance prohibited property owners from installing storage tanks which contained flammable materials without the written consent of a majority of neighbors. In its discussion the supreme court noted its prior approval of ordinances in which neighboring property owners had the authority to waive a restriction, citing *Valkanet v. City of Chicago* (1958), 13 Ill. 2d 268, 148 N.E.2d 767. The court proceeded to hold as follows:

> "Since *Valkanet* we have given the matter further study and feel that the subtle distinction between "creating" and "waiving" a restriction cannot be justified. Each constitutes an invalid delegation of legislative power where the ordinances, as here, leave the ultimate determination of whether the erection of the station would be detrimental to the public welfare in the discretion of individuals rather than the city."

The plaintiff's right to conduct a legitimate business in a district zoned commercial, in which the contemplated business is permitted, can not be left to the whim and caprice of neighboring owners. The procuring or non-procuring of frontage consents has no bearing upon the public health or welfare, and such a requirement is an unwarranted and unauthorized exercise of the police power.

*This is not to say that the city can not impose separate requirements on this property in addition to zoning restrictions. Other ordinances \*\*\* must be reasonably designed to insure standards of health and safety.* These frontage-consent provisions do not encompass any governmental objects not already included within the scope of the zoning ordinance \*\*\*." (Emphasis added.) (*Drovers*, 18 Ill. 2d at 478-79.)

Thus, an ordinance requiring the consent of neighbors is valid if it reasonably relates to the public welfare. The *Drovers* court, however, concluded that the ordinance requiring permission to construct tanks which housed flammable materials did not implicate the public interest. *Drovers*, 18 Ill. 2d at 479; accord *Clark Oil & Refining Corp. v. Village of Tinley Park* (1969), 110 Ill. App. 2d 61, 66, 249 N.E.2d 140.

In numerous cases where neighbors have had a special interest not shared by the general public, for example, a decrease in the value of their property, the courts have invalidated provisions requiring approval of neighboring landowners because these individuals would not be motivated by a desire to further the public welfare. (*Lakin v. City of Peoria* (1984), 129 Ill. App. 3d 651, 472 N.E.2d 1233 (construction of two-family dwelling); *Kleidon v. City of Hickory Hills* (1983), 120 Ill. App. 3d 1043, 458 N.E.2d 931 (zoning variance); *Jeisy v. City of Taylorville* (1980), 81 Ill. App. 3d 442, 401 N.E.2d 627 (neighbors did not want to live near commercial establishment); *La Salle National Bank v. County of Du Page* (1977), 54 Ill. App. 3d 387, 369 N.E.2d 505 (court held that neighbors' concern about land use was unrelated to the public welfare).) Therefore, in cases involving private interests, an ordinance cannot require property owners to obtain approval from their neighbors.

Community approval is a proper requirement, however, if the public interest is affected. (*Malito v. Marcin* (1973), 14 Ill. App. 3d 658, 303 N.E.2d 262, *appeal dismissed* (1974), 417 U.S. 963, 41 L. Ed. 2d 1135, 94 S. Ct. 3165; accord *Duncan v. Marcin* (1980), 82 Ill. App. 3d 963, 403 N.E.2d 653; *Hall v. Marcin* (1977), 49 Ill. App. 3d 528, 364 N.E.2d 549.) *Malito* involved a challenge to elections in several Chi-

cago precincts wherein the voters prohibited the retail sale of alcoholic beverages. The court upheld the elections and in the process distinguished *Drovers*, stating as follows:

"The holding of the court in *Drovers* is not controlling in the case before us. The ultimate determination of whether the sale at retail of alcoholic beverages in an anti-saloon territory should be prohibited was made by the legislature upon enactment of the applicable provisions of the Liquor Control Act. Under that act the voters may determine whether its provisions shall become operative. The qualified voters, in deciding a purely local question, need not consider the establishment of anti-saloon territory within their precinct in relation to the safety and general welfare of the public. The legislature has already determined that the safety and general welfare of the residents within a precinct would be furthered by the prohibition of sale of alcoholic beverages at retail within that precinct." (*Malito,* 14 Ill. App. 3d at 661.)

The courts employed the logic of *Malito* in the local option cases of *Duncan* and *Hall,* and its rationale is equally compelling in the case at bar. The Chicago city council's message in the preamble to its ordinance is both clear and forceful: it believes the public welfare would be furthered by prohibiting Class 4 PPA businesses from operating during certain hours. Besides, the problems addressed by the city (*i.e.,* violation of curfew) involve the public welfare and are neither native nor peculiar to the neighborhood where a juice bar operates. If the residents of a particular neighborhood decide to disregard the considered wisdom of their city council, the council itself, pursuant to well-established authority, has made it their prerogative. See *Philly's v. Byrne* (7th Cir. 1987), 732 F.2d 87, 93.

### III

The plaintiff advances the argument that the amended ordinance unconstitutionally ignores the preexisting use of its property. Once again, however, the plaintiff introduces principles of zoning law, which, as we have heretofore noted, have no applicability here.

■ Instead, the relevant question is whether the municipality has the authority to alter the benefits and responsibilities that a license holder would receive from a license. The case law clearly answers this question in the affirmative. (See *Vaden,* 809 F.2d 361; *Fireside,* 102 Ill. 2d 1, 464 N.E.2d 1275.) For instance, the court in *Vaden* held that an ordinance which changed the rules governing mobile food vendors was constitutional as long as it was rationally related to promoting

the public welfare. (*Vaden,* 809 F.2d at 364.) This court too has held that a municipality has the authority to regulate licenses during their pendency. (*Black Knight Restaurant, Inc. v. City of Oak Forest* (1987), 159 Ill. App. 3d 1016, 513 N.E.2d 109; *Bec-N-Call, Inc. v. Village of Steger* (1979), 75 Ill. App. 3d 957, 394 N.E.2d 728.) Furthermore, the defendants support their position with the policy argument that if we were to adopt the plaintiff's viewpoint, a governmental entity could never alter the terms of a license. Such a result would be nothing short of detrimental to the public welfare and must be rejected by this court.

An entirely different question is whether the plaintiff was entitled to compensation for a portion of the fees it paid for its 1987 license, since the rights resulting from this license were altered during the year, but the plaintiff does not request such relief from this court. In light of the foregoing, we agree with the circuit court that the ordiance is constitutional and that the plaintiff is not entitled to any relief.

Affirmed.

STAMOS and BILANDIC, JJ., concur.