**City of Chicago, a Municipal Corporation, Plaintiff-Appellant, v. Severn Provus and Birdell Provus, His Wife, Defendants-Appellees.**

**Gen. No. 52,693.**

First District, Second Division.

September 30, 1969.

Raymond F. Simon, Corporation Counsel of City of Chicago (Marvin E. Aspen and Howard C. Goldman, Assistant Corporation Counsel, of counsel), for appellant.

Jay Erens, of Chicago, for appellees.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

On November 17, 1966, the plaintiff, City of Chicago (hereinafter referred to as the City), filed its verified amended two-count complaint against the defendants, Severn Provus and Birdell Provus, his wife, who were the owners of a three-story income-producing brick building in the City of Chicago. Both counts of the complaint alleged twenty-one building code violations which were prohibited by the Municipal Code of Chicago. In count one, the City prayed for the issuance of a People's Writ of Injunction against the defendants commanding the demolition of their building or, alternatively, that the court issue a mandatory and permanent injunction directing the defendants to abate their alleged public nuisance by making the necessary repairs themselves after furnishing the satisfactory proof that their structure could be safely repaired within a time certain, that they had

the necessary financing to do so, and that they would furnish plans and specifications for such repairs to the Commissioner of Buildings of the City of Chicago. In count two, the City prayed for the entry of a judgment against the defendants in the amount of $2,200 per day or such other daily sum as the Court deemed proper.

In their verified answer, the defendants denied that their building violated any Building Code provisions and pleaded the doctrine of estoppel by verdict as an affirmative defense, which doctrine was allegedly applicable to four of the twenty-one violations. Attached to their answer were certified copies of the "half-sheet" statement of claim and judgment in Case No. 63 MC 44182. These documents showed that the defendant, Severn Provus, in a bench trial and after a full evidentiary hearing on the merits, had been found not guilty in the prior 1963 Municipal Court action which had alleged three Building Code violations apparently identical to four of the twenty-one violations alleged in the complaint at bar. The City had also brought the prior suit, and the same building was involved. In their verified answer, the defendants also alleged that no appeal was taken from the 1963 final judgment adverse to the City, said judgment had not been otherwise vacated, modified, or set aside, and the condition of their building, with respect to the four violations allegedly barred by the estoppel by verdict doctrine, had not changed from the date alleged in the prior complaint, February 14, 1963, to January 6, 1965, the date they filed their answer to the instant complaint.

In its reply to this affirmative defense, the City alleged that the doctrine of estoppel by verdict did not bar the instant litigation because: (1) no specific findings of fact were made in the prior suit upon which an estoppel could apply; and (2) the quantum of proof required in the prior quasi-criminal suit was a clear preponderance of the evidence whereas the instant complaint in chancery only required a mere preponderance of the evidence.

180

Prior to the trial, the City admitted under oath, in response to the defendants' written Requests for Admissions of Fact (Ill Rev Stats 1965, c 110, § 101.18), that the factual allegations pertaining to four of the twenty-one Building Code violations involved in the instant complaint were identical to the City's allegations in the prior 1963 Municipal Court case. At trial, opposing counsel orally stipulated to the same matter. Counsel for the defendants also introduced into evidence the certified report of proceedings pertaining to the 1963 litigation. This transcript is also included in the record before us.

After a full hearing, in which testimony was heard, the trial court entered its final decree and mandatory injunction finding in favor of the City as to some of the violations and requiring the defendants to make certain repairs; dismissing other alleged violations, some with prejudice to the City and others without prejudice; and ruling that the prosecution of the four alleged violations was barred by the estoppel by verdict doctrine. The court made no findings of fact nor entered any judgment as to the money damages sought from the defendants in count II of the instant complaint.

The City appeals only from that portion of the decree which found that the prosecution of four alleged violations was barred by the doctrine of estoppel by verdict. It has abandoned the two contentions once urged in its reply to the answer of the defendants, which latter pleading first raised the affirmative defense of estoppel by verdict. The City now contends that the doctrine of estoppel by verdict, as a matter of public policy, should not be invoked against a municipality when it is exercising its police powers and that the doctrine cannot be applied when a municipal ordinance provides that each day a violation exists constitutes a separate and distinct offense. The defendants have not cross-appealed from any portion of the decree which is adverse to them.

 The doctrine of estoppel by verdict, a branch of res judicata, was fully explained by the court in Harding Co. v. Harding, 352 Ill 417, 426, 186 NE 152, 155 (1933):

". . . The principle of res judicata applies, however, to cases where, although the cause of action is not the same, some fact or question has been determined and adjudicated in a former suit and the same fact or question is again put in issue in a subsequent suit between the same parties. In such cases the determination in the former suit of the fact or question, if properly presented and relied on, will be held conclusive on the parties in the later suit, regardless of the identity of the cause of action, or the lack of it, in the two suits. When the second action between the same parties is upon a different cause of action, claim or demand, it is well settled that the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other matters which might have been litigated and determined. In such cases the inquiry must always be as to the point or question actually litigated and determined in the original action, the burden of proof is on him who invokes the estoppel, and extrinsic and parol evidence is admissible to prove that the precise question in the second case was raised and determined in the first. (Citations omitted.) This principle is sometimes called estoppel by verdict, and the estoppel is equally available to either party, the plaintiff in support of his action or the defendant of his defense, when the circumstances warrant it. Whether the adjudication relied on as an estoppel goes to a single question or all the questions involved in the case, the fundamental principle upon which it is allowed is that justice and public policy alike demand that a matter, whether consisting of one or many

questions, which has been solemnly adjudicated in a court of competent jurisdiction shall be deemed finally and conclusively settled in any subsequent litigation between the same parties where the same question or questions arise, except where the litigation is a direct proceeding for the purpose of reversing or setting aside such adjudication. (Citations omitted.)"

■■ In oral argument before this court, the City conceded that the doctrine of estoppel by verdict is applicable to this case. The main thrust of its argument is that this court should relax the application of the doctrine in cases involving the exercise of a municipality's police power. A question of public policy is thereby presented to this court in which we are called upon to weigh two principles of law, both favored in our system of jurisprudence; namely, regulatory police power and estoppel by verdict.

In support of its contention that the application of estoppel by verdict in the instant case was contrary to judicial opinion and public policy, the City chiefly relies upon People v. Levy Circulating Co., 17 Ill2d 168, 161 NE 2d 112 (1959), in which the court held, as a matter of public policy, that the doctrine of estoppel by verdict did not bar the State when collecting public revenues by way of taxation. It expressly overruled the prior case of People v. Psi Upsilon Fraternity, 324 Ill 540, 155 NE 279 (1927), which had come to a contrary result.

In the Levy case, the court recognized, as clearly erroneous, the prior judgments of the trial court which had held the defendant corporation's capital stock to be exempt from assessment of a personal property tax. The reviewing court chose not to penalize the State for its failure to directly appeal these patently erroneous judgments, but allowed the People to collaterally attack them, although the prior judgments were not void. Inherent

183

in its ruling was the apparent conviction that in revenue matters, the people of this State, who also pay taxes, will not be barred by the doctrine of estoppel by verdict when its public servants do not directly appeal a clearly erroneous judgment having to do with the collection of revenues. The court, however, expressly limited its holding to matters involving the public revenues.

The instant case does not involve the collection of public revenues. Rather, it has to do with a municipality's exercise of its regulatory police power. In our opinion, this distinction is determinative of this case. In City of Elmhurst v. Kegerreis, 392 Ill 195, 64 NE2d 450 (1946), a zoning case, the court held a municipality barred by the doctrines of res judicata and estoppel by verdict from relitigating, in an injunction suit, a particular portion of its zoning ordinance which had been passed on by another court, adversely to the City, in a prior mandamus suit. The City had not appealed the prior adverse judgment. The mandamus litigation had been between Kegerreis and the City's Superintendent of Building Construction whereas the injunction suit was between the City and Kegerreis. The court held the City to be in privity with its Superintendent who, in the prior mandamus case, had been sued only in his official capacity so as to legally compel him to issue a building permit and thereby perform a corporate act of the City. In discussing the doctrines of res judicata and estoppel by verdict, the court stated at p 208 of 392 Ill, p 455 of 64 NE2d, as the apparent rationale for its decision:

". . . In this suit the appellant (City of Elmhurst) seeks to relitigate the question of the validity of the zoning ordinance. If that issue had been determined adversely to the plaintiff in the mandamus suit, the appellee here, we do not anticipate that anyone would contend that he could relitigate that question against the city in this suit, although it (the city)

was not the defendant named in the mandamus suit. For the same reason, if the city had been named as the defendant in the mandamus suit, no one could successfully contend that the superintendent of building construction would be permitted, in a subsequent suit involving corporate action on his part, under the same ordinance of the city, to relitigate the question of the validity of the zoning ordinance.

"The purpose of the doctrines of res judicata and estoppel by verdict is to prevent the relitigation, in a subsequent proceeding, of questions settled by a court of competent jurisdiction in a prior suit between the same parties or their privies. . . ."

 It is a well established principle in Illinois that the zoning ordinances of a municipality involve the exercise of its regulatory police power. (Quilici v. Village of Mt. Prospect, 399 Ill 418, 78 NE2d 240 (1948) ; Trust Co. of Chicago v. City of Chicago, 408 Ill 91, 96 NE2d 499 (1951).) It can hardly be doubted that in prosecutions for building code violations prohibited by municipal ordinances, the municipality is also exercising its regulatory police power. (Chicago v. Washingtonian Home, 289 Ill 206, 124 NE 416 (1919) ; City of Chicago v. Miller, 27 Ill2d 211, 218, 188 NE2d 694, 698 (1963).) The holding of the court in City of Elmhurst v. Kegerreis, 392 Ill 195, 64 NE2d 450 (1946), therefore controls our resolution of the instant case.

██ ██ This court recognizes that a structure with numerous building code violations is a threat to the public safety. The public is protected, however, when its public servants vigorously prosecute the owners of such buildings. If an adverse final judgment is entered against the municipality by a court having jurisdiction of the parties and the subject matter and the municipality is of the opinion that the judgment is erroneous, it should and must directly appeal the judgment rather than seek

185

to reverse it in a collateral proceeding. Every presumption will be indulged in favor of the validity of the judgment when it is collaterally attacked. (Dean v. Kellogg, 394 Ill 495, 500–01, 68 NE2d 898, 901–02 (1946); Steffens v. Steffens, 408 Ill 150, 96 NE2d 458 (1951).)

 Although the court in the Levy case relaxed the doctrine of estoppel by verdict in cases involving the public revenues, we are not willing to extend that relaxation to cases involving the exercise of a municipality's police power. The municipality in this case has had its day in court and was unsuccessful. Apparently, it was of the opinion that the prior Municipal Court judgment was correct since it did not directly appeal from it.

 The allegations that the defendants' building violated three specific sections of the building code were litigated in 1963 and a not guilty finding was the result. Approximately two years later, the City sought to relitigate this matter in another suit which alleged twenty-one Building Code violations, eighteen new violations and three allegations which had been decided against the City in the prior judgment. The City had not appealed from that prior adverse judgment. It is undisputed that the physical condition of the structure, with respect to these three alleged violations, had not changed in the ensuing two years. Litigation must come to an end at some point in time. The prior litigation had resulted in a not guilty judgment. It is manifestly unfair to subject the defendants in the instant case to the financial and emotional stress of another trial on the same issues thereby giving the municipality a second opportunity to prove its case.

 Furthermore, after the time to perfect an appeal has passed and no appeal has been taken, the defendant in any litigation and the public at large have a right to rely upon the records of the court which reflect a not guilty judgment. To permit a municipality to collaterally attack such a final judgment, when the gov-

186

ernmental unit does not allege lack of jurisdiction or fraud in the procurement of the prior judgment, would not aid in upholding the permanence and stability of judgments. As was stated by the court in People v. Kidd, 398 Ill 405, 409, 75 NE2d 851, 854 (1947), a quo warranto proceeding:

". . . If a court has jurisdiction its judgment may be directly attacked for errors or irregularities, but however manifestly erroneous the decision may be, it is binding upon all parties and privies until it is reversed or set aside in a direct proceeding for that purpose. (Citations omitted.) Jurisdiction to hear and decide a cause necessarily includes the right to render an erroneous decision. (Murch v. Epley, 385 Ill 138.) The judgment of a court which had jurisdiction is immune from collateral attack, even though such judgment is erroneous. (Woodward v. Ruel, 355 Ill 163.) . . . The doctrine of res judicata is not dependent upon the correctness of the judgment, or of the verdict or finding on which it is based. (Citations omitted.) Nor is the value of a plea of former adjudication to be determined by the reasons which the court rendering the former judgment may have had for doing so. (City of Elmhurst v. Kegerreis, 392 Ill 195.) . . . Sound public policy requires that different judicial determinations shall not be made of the same cause of action and that a judgment rendered jurisdictionally shall, as to such cause of action, be conclusive upon the parties thereto and their privies. . . ."

██ ██ The other cases relied upon by the City are distinguishable from the case at bar. City of Girard v. Girard Egg Corp., 87 Ill App2d 74, 230 NE2d 294 (1967), was an injunction suit to enjoin a public nuisance in which the court held that the City was not estopped by a not guilty verdict in a prior criminal proceeding

187

between the same parties for the same violation since the quantum of proof required in the preceding criminal litigation was much greater than in the later injunction suit. In the instant case, the prayer for relief in the 1963 Municipal Court complaint asked for the imposition of a monetary penalty or fine. It is well settled that civil and not criminal rules apply when a municipality sues for an ordinance violation and seeks to recover a monetary penalty. City of Chicago v. Ballinger, 45 Ill App2d 407, 410, 195 NE2d 739, 741 (1964); City of Highland Park v. Curtis, 83 Ill App2d 218, 226 NE2d 870 (1967). Civil rules also apply when an injunction is sought. The City sought a mandatory injunction in the case at bar. Thus, the cited case is not applicable to the present litigation.

Fleshner v. Kansas City, 348 Mo 978, 156 SW2d 706 (1941), invoked the application of the rule that a municipality is not equitably estopped from denying the authority of its agent when he has performed an ultra vires act. Such conduct is not involved here. State v. Missouri Utilities Co., 339 Mo 385, 96 SW2d 607 (1936), and People by Barrett, Auditor v. Bradford, 372 Ill 63, 22 NE2d 691 (1939), both involved principles of law pertaining to equitable estoppel or estoppel in pais and not estoppel by verdict. Thus, they too are not controlling.

The City also urges that the doctrine of estoppel by verdict cannot be applied when a municipal ordinance provides that each day a violation exists constitutes a separate and distinct offense. No cases are cited in support of this contention. Although such an ordinance providing for a continuing violation effectively removes the bar of the statute of limitations, estoppel by verdict would still apply if one of the parties or their privies sought to relitigate a material and relevant issue which had been adjudicated in a prior suit between them involving a different cause of action. To decide otherwise

would be to defeat the very purpose of this doctrine. This contention cannot be sustained.

 Approximately one month after oral argument, this court allowed the City's motion for leave to file instanter a memorandum of additional authority and argument. In its motion, the City asked this court to take judicial notice of § 1–2–7 of the 1961 Illinois Municipal Code (Ill Rev Stats 1961, c 24) which provides in part:

> ". . . No prosecution, recovery, conviction, or acquittal, for the violation of any ordinance, shall constitute a defense to any other prosecution of the same party for any other violation of the same or any other ordinance, although the different causes of action existed at the same time, and, if united, would not have exceeded the jurisdiction of the court or magistrate."

The City contends that this statute is determinative of the issues before this court and justifies a reversal of the decree. The City does not cite any cases which have construed this statute. Our research has failed to disclose any Illinois cases on point. A reading of the statute, however, indicates that it addresses itself, within the factual setting of this case, to the situation wherein a municipality believes that a property owner is concurrently violating either two subsections of one ordinance or two separate ordinances. It elects, however, not to join these concurrent violations in one complaint, preferring instead to try the property owner separately for each alleged violation. Under the terms of the 1961 statute, a final judgment—whether it be a conviction or an acquittal—as to less than all of these violations will not bar a subsequent action for one or more of the remaining violations, even though all such violations existed at the time of the earlier action and could have been joined in

189

that action. Concurrent violations therefore seem to be the basis for the 1961 statute relied upon by the City.

In the case at bar, the then Municipal Court of Chicago entered a judgment in 1963 finding the defendant, Severn Provus, not guilty of specified building code violations from which adverse judgment the City did not appeal. In light of this adjudication, the City cannot now successfully urge, as it appears to in its motion, that concurrent violations, due in part to the earlier 1963 litigation, existed when it filed its later complaint seeking a mandatory injunction against Provus and his wife. Concurrent violations cannot be said to arise in part from earlier litigation resulting in a judgment favorable to one of the defendants from which the City does not appeal. The statute relied upon by the City is not controlling.

We hold that the trial court was correct in ruling that the City, like any other litigant, was bound by the doctrine of estoppel by verdict in matters not involving the collection of public revenues. The decree is affirmed.

Decree affirmed.

BURKE and McCORMICK, JJ., concur.