OPYT'S AMOCO, INC., *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF SOUTH HOLLAND *et al.*, Defendants-Appellees.—THE VILLAGE OF SOUTH HOLLAND, Plaintiff-Appellee, v. ROBERT WHITE, Agent for Kar Kleen Car Wash, Defendant-Appellant.—The VILLAGE OF SOUTH HOLLAND, Plaintiff-Appellee, v. GEORGE'S AMOCO GAS STATION *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 1—89—2691, 1—89—2908, 1—89—3049 cons.

Opinion filed January 30, 1991.

475

476

Bruce M. Bozich and Clifford Lee Gunter, both of Law Offices of Bruce M. Bozich, of South Holland, for appellants.

Michael J. Marovich and Ronald Buikema, both of Buikema, Hiskes, Dillner, O'Donnell & Marovich, Ltd., of South Holland, for appellees.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

This consolidated appeal concerns the constitutionality of the Village of South Holland's ordinance prohibiting certain business activities on Sundays. The ordinance challenged consists of sections 9—3(a), 9—3(b), 9—3(c), 9—3(d), and 9—3(e) of chapter 9 of article I of the Code of the Village of South Holland (South Holland, Ill., Code, art. I, ch. 9, §§9—3(a), (b), (c), (d), (e) (19___)).

I. No. 1—89—2691

Plaintiffs, Opyt's Amoco, Inc. (Opyt's); I-80 Investments Co., d/b/a Truck-o-mat (Truckomat); Linge, Ltd., d/b/a Calumet Auto Truck Plaza (Calumet); Kar Kleen Kwick Stop, Inc., d/b/a Kar Kleen Car Wash (Kar Kleen); and George Graske, d/b/a Quick Six Amoco, n/k/a Amoco Food

Shop (Amoco), filed a complaint for declaratory judgment on February 1, 1989, for themselves and for others similarly circumstanced against defendants, Village of South Holland, a municipal corporation (the Village); Village Board President Harold Gouwens; and Village Trustees Bert Docter, William McCarthy, Eugene Prystalski, Warren Teichler, Earl Gossett, and Richard Zimmerman.

The complaint alleged the following. Opyt's was in the business of repairing automobiles, renting videocassettes, and selling gasoline, lottery tickets, and takeout food and drinks. Truckomat was in the business of selling truck washes, diesel fuel, retail goods, and takeout food and drinks. Calumet was in the business of selling diesel fuel, gasoline, and retail goods, repairing trucks, and operating a restaurant. Kar Kleen was in the business of selling automatic and manual car washes, gasoline, and takeout food and drinks. Amoco was in the business of selling gasoline, takeout food and drinks, and lottery tickets.

The Village had enforced or threatened to enforce the ordinance against plaintiffs because of Opyt's rental of videocassettes, Amoco's sale of pretzels and cigarettes, Kar Kleen's sale of car washes, Calumet's sale of crackers, potato chips, cinnamon rolls, a license plate sign, and a can of soup, and Truckomat's sale of truck washes.

Plaintiffs sought declarations that: (1) the ordinance was arbitrary, capricious, unreasonable, and bore no reasonable relation to the public health, safety, morals, or welfare; (2) plaintiffs' businesses could be used for any lawful activity on Sundays as long as such activities did not tend to disturb the peace or worship of others; and (3) the ordinance was illegal, unconstitutional, void, and in violation of the due process and equal protection clauses of the Illinois and United States Constitutions.

A copy of the amendments to the ordinance was attached to the complaint. The amendments became effective after their adoption by the Village president and the board of trustees on May 2, 1988. The ordinance deleted section 9—3(a) of article I of chapter 9 of the Code of the Village of South Holland (the Code), and inserted in its place:

"(a) Wholesale and retail mercantile and merchandising establishments. It shall be unlawful for any person to engage in the business of selling, dispensing, renting or distributing, at wholesale or retail, goods, wares or merchandise of any kind or description from an established place of business on the first day of the week commonly called Sunday within the village, provided that this subsection shall not be applicable to works of charity or to the sale of drugs or medicine, the sale or dispensing of articles of food and drink for human consumption from vending machines, the sale or dispensing of articles of food and drink for human con-

sumption from premises whose sole purpose is the daily preparation of food and drink for retail sale to the public, the intent being to allow food and drink dispensing from retail establishments that are commonly known as restaurants, provided further that the sale of said food and drink shall not be allowed from a drive-through facility on Sunday and all drive-through facilities dispensing food and drink shall remain closed, the sale and distribution of newspapers and magazines, the sale of milk, ice cream, ice, gasoline, lubricating oil, or the sale of articles and products necessary to meet the emergency needs of the public on Sunday in the village." South Holland, Ill., Code art. I, ch. 9, §9—3(a) (19____).

Section 9—3(b) of article I of chapter 9 of the Code was deleted, and inserted in its place was:

"(b) Manufacturing and construction work. It shall be unlawful for any person to engage in the business of manufacturing, constructing, producing or processing property of any kind or description, from an established place of business, on the first day of the week, commonly called Sunday, within the village; provided, that this subsection shall not be applicable to works of charity or to any manufacturing or construction work necessary to meet the emergency needs of the public on Sunday in the village. Whenever there exists a practical necessity to perform essential testing or emergency maintenance incident to manufacturing, processing or testing, such emergency maintenance or essential testing may be performed on Sundays. Provided, further, that this subsection shall *not be applicable to any manufacturing establishment on an industrially-zoned parcel in which a continuous process, as determined by the President of the Board* of Trustees of the Village of South Holland that the same is necessary, provided further that said manufacturing establishment does no shipping or receiving on Sunday in the village, provided further that said [*sic*] manufacturing must be no less than two hundred feet from residentially zoned property." (Emphasis added.) South Holland, Ill., Code art. I, ch. 9, §9—3(b) (19____).

Section 9—3(d) of article I of chapter 9 of the Code was deleted, and inserted in its place was:

"(d) Personal services and ordinary labor. It shall be unlawful for any person to engage in the business of selling, rendering or performing personal services or labor of any kind or description, from an established place of business, on the first day of the week commonly called Sunday, within the village, provided that this subsection shall not be applicable to works of charity, to the con-

duct of religious services, to services necessary for the dental, medical or hospital care of humans and animals, to ambulance services and services rendered by funeral establishments, to the operation of hotels, inns, lodging houses, public transportation facilities, public utility facilities, or public places of amusement and recreation, automatic teller machines, or to any labor or services necessary to meet the emergency needs of the public on Sunday in the village." South Holland, Ill., Code art. I, ch. 9, §9—3(d) (19___).

Plaintiffs were granted leave to file an amended complaint that added count II, which alleged that the ordinance was at least in part a zoning ordinance and that, upon information and belief, plaintiffs' businesses were all located in commercial zones. It was also alleged that the ordinance denied plaintiffs equal protection and violated the Illinois and United States Constitutions because businesses in commercial zones were discriminated against by being prohibited from doing business on Sundays while businesses in manufacturing zones were permitted to remain open without regard to whether the businesses in commercial zones were within 200 feet of residentially zoned property and without any rational basis for any such distinction.

Defendants admitted in their answer that the Village either had threatened to enforce or had enforced the ordinance against plaintiffs. Defendants denied that the ordinance was unconstitutional.

Plaintiffs filed a motion for judgment on the pleadings on the basis that the ordinance was unconstitutional. Although the motion was not captioned as a summary judgment motion, attached were several supporting affidavits. Michael LaVieri, Calumet's general manager, swore that, on information and belief, Calumet was in a commercially zoned area. Robert White swore that: (1) he owned Kar Kleen; (2) the washing procedure was fully automated and was operated by the customers by inserting coins; and (3) no attendant was necessary.

Brian J. Golden swore that: (1) he was a resident of the Village who purchased on Sunday, July 16, 1989, a pair of sunglasses in the gift shop located in the Abe Lincoln Oasis located on Interstate 80 in the Village; (2) the gift shop was separate from the main food service areas of the oasis; (3) he observed various other items being offered for sale including stuffed animals, candy, greeting cards, and souvenirs; and (4) he observed coin-operated games and the sale of lottery tickets. Other affidavits were provided by Truckomat, Amoco, and Opyt's.

Also attached to the motion was South Holland police department's general order 88—05, which was addressed to all sworn members and stated the department's official Sunday closing enforcement policy. The

order listed the articles that could be sold on Sundays, according to the Village attorney. The list stated in part:

> "5) other emergency items (consult with the Village Attorney for opinion in this area if situation arises)."

The order also listed the permitted manufacturing and construction, according to the Village attorney, and the list stated in part:

> "2) emergency manufacturing/construction (consult Village Attorney if in doubt).
>
> 3) emergency testing or maintenance. Normal maintenance which is done on Sundays for convienence [sic] is not an exemption. (Consult Village Attorney if in doubt)
>
> 4) continuous process manufacturing at businesses zoned industrial which are at least 200' from a residential zone as authorized by the Mayor in writing. These factories must apply in advance to the Mayor and receive written permission as an exemption. However, these exempted factories may not engage [sic] in any shipping or receiving even with an exemption to be open."

A list of the permitted personal services/labor, according to the Village attorney, was also given, and it stated in part:

> "11) emergency services. (Consult Village Attorney if in doubt)."

Also attached to the motion was a letter from Harold Gouwens, identified as mayor and as chairman of the Reliable Party, that was addressed to citizens and stated in part that he appreciated their referendum votes to retain the ordinance because of his belief that it was necessary to put aside one day so that people could either worship or devote time to family.

Defendants filed one pleading which was their response to the motion and their own motion for judgment on the pleadings. Defendants argued, *inter alia*, that the exemptions in the ordinance were reasonable and did not render the ordinance unconstitutional and that it was reasonable to distinguish among manufacturing, retail, and construction businesses.

Attached to plaintiffs' reply were several affidavits. Judy Graske, the owner and manager of Amoco, swore in one of two affidavits that: (1) on June 4, 1989, a customer wanted to buy cheese and orange juice because she was a diabetic and was feeling ill; and (2) Graske was not sure if the sale would violate the ordinance under those circumstances. Brian J. Golden swore in an affidavit that he had taken attached photographs of the Village water tower; the tower in the photographs stated "South Holland" and "A Community Of Churches."

The trial court's memorandum of opinion entered September 1, 1989, stated in part: (1) the fourteenth amendment (U.S. Const., amend. XIV) granted great discretion to the States in enacting laws; (2) the favorability of closing laws was not a proper subject of inquiry; (3) what was important instead was that enacted laws had to be applied on a reasonable basis; and (4) plaintiffs failed to overcome the basic presumption of the constitutionality of Sunday blue laws. An order was entered September 19, 1989, denying plaintiffs' motion for judgment on the pleadings, granting defendants' motion for judgment on the pleadings, and finding that there was no reason to delay appeal and enforcement of the order.

The parties stipulated that an annexation resolution dated January 23, 1967, which was an exhibit to plaintiffs' reply brief, was to be made part of the record on appeal. According to this document, the Village annexed real estate that was owned by the Illinois State Toll Highway Commission and situated in unincorporated territory adjacent to the Village, and the Village agreed to refrain from subjecting the commission and its lessees to Village zoning regulations.

■ Plaintiffs argue that the trial court erred in granting defendants' motion for judgment on the pleadings and in denying plaintiffs' motion for judgment on the pleadings. Plaintiffs argue that in deciding the motions for judgment on the pleadings, the trial court erred in not examining the ordinance for constitutional violations. Plaintiffs base this argument on the statements in the memorandum of opinion that "the favorability of closing laws, as in this case, is not a proper subject of judicial inquiry" and that what was important instead was the application of the laws on a reasonable basis. This portion of the opinion merely referred to the fact that it was not an issue for the court to decide whether closing laws in general should be enacted. The later statement that plaintiffs failed to prove the unconstitutionality of closing laws indicates that the trial court considered the constitutionality of the ordinance. Even if the trial court did not consider the specific provisions of the ordinance, this court will consider the ordinance's constitutionality as part of its review of the trial court's order.

■ Plaintiffs next argue that the ordinance was an unauthorized delegation of legislative authority to the executive branch because: (1) the ordinance gave to Village officials the authority to determine on a case-by-case basis what was a crime; (2) the Village attorney was to define the exempted items and the term "emergency"; (3) the mayor was to define the ordinance's phrase "continuous process"; and (4) the ordinance should have included definitions of the exempted items and of the terms "emergency" and "continuous process." Plaintiffs refer to the po-

lice department order's statement that the officers should consult the Village attorney if in doubt about emergency exemptions. Plaintiffs cite *Vallat v. Radium Dial Co.* (1935), 360 Ill. 407, 413, 196 N.E.2d 485, which held that if a statute leaves it to a ministerial officer to define the thing to which the statute was to be applied and if the definition was not commonly known, the statute is invalid because it creates an unwarranted and void delegation of legislative power.

■ Plaintiffs do not have standing to raise the issue of unlawful delegation based upon the allegation that the mayor was to define "continuous process" because the ordinance section that contains the "continuous process" language concerns manufacturing and construction work and therefore did not apply to plaintiffs. See *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 451, 389 N.E.2d 529 (in order to preclude those persons having no interest in a controversy from bringing suit, it is necessary that one who challenges the constitutionality of a statute bring himself within the class as to whom the law was allegedly unconstitutional); *Gholson v. Engle* (1956), 9 Ill. 2d 454, 461-62, 138 N.E.2d 508 (plaintiff who had not taken an examination was precluded from questioning the constitutionality of statute relating to the conduct of examinations as an unlawful delegation of power); *Jaffe v. Cruttenden* (1952), 412 Ill. 606, 613, 107 N.E.2d 715 (plaintiff could not attack provision as an invalid delegation of authority because he was not directly aggrieved by it and because he was not within the class as to whom the law was allegedly unconstitutional); *Klein v. Department of Registration & Education* (1952), 412 Ill. 75, 87-88, 165 N.E.2d 758 (plaintiff had no standing to raise the issue whether an act which provided that an examination was to be given unlawfully delegated legislative power because he was not required to take the examination).

■ The ordinance does not delegate any legislative authority to the Village attorney. The police department's internal order stated that the Village attorney was to be consulted for an opinion on the applicability of certain provisions of the ordinance. This order was only for the use of the police department and was not part of the ordinance. The lack of definitions of the exempted items and of the term "emergency" did not thereby delegate legislative authority because the terms were sufficiently specific to indicate the legislative body's intent.

Plaintiffs next argue that the ordinance was unconstitutionally vague, and they refer to the issues whether: (1) the rental of videocassettes was allowed; (2) the sale of takeout foods was allowed only by restaurants; (3) emergency truck washes were "true emergencies"; (4) the sale of ice cream was a "true emergency"; (5) the sale of popsicles was allowed as "ice"; and (6) the sale of diesel fuel was allowed as "gas-

oline." Plaintiffs also argue that: (1) the term "emergency" was not defined in the ordinance so that it was unknown whether an emergency included a truck that was overweight due to the accumulation of mud and snow or included the sale of orange juice and cheese to a diabetic; (2) the phrase "continuous process" was not defined; and (3) there is an alleged inconsistency between ordinance sections 9—3(a) and 9—3(d) in that the latter prohibits the sale of items exempted in the former.

■ ■ A criminal statute is unconstitutionally vague if it fails to give adequate notice as to what conduct it prohibits or if its terms are so ill-defined that the ultimate decision as to its meaning rests on the opinions and whims of the trier of fact rather than on any objective criteria. (*People v. Wawczak* (1985), 109 Ill. 2d 244, 248-49, 486 N.E.2d 911.) Mathematical precision is not required, and a statute is not vague merely because an essential term is not defined within the statute itself. (*Wawczak*, 109 Ill. 2d at 249.) Due process is denied if people of ordinary intelligence must necessarily guess at an act's meaning and if they differ as to its application. *People ex rel. Duffy v. Hurley* (1949), 402 Ill. 562, 567, 85 N.E.2d 26.

■ The ordinance is not vague as to whether the rental of videocassettes and the sale of truck washes are permitted; it is clear they are not permitted. The sale of takeout food other than by restaurants is prohibited because the ordinance permits only the sale of food from premises if their sole purpose is the daily preparation of food and drink for retail sale to the public. The issues whether the sale of truck washes and ice cream are emergencies do not relate to the issue whether the ordinance is vague.

■ ■ The continuous process exception is inapplicable to plaintiffs who were not manufacturers, and none of the plaintiffs had either been threatened with enforcement of the ordinance or had been cited for violation of the ordinance in connection with the sale of popsicles or diesel fuel. Plaintiffs therefore do not have standing to raise the issues whether the continuous process exception was vague and whether diesel fuel and popsicles could be sold. (See *Illinois Gamefowl*, 75 Ill. 2d at 451 (one who challenges a statute's constitutionality must bring himself within the class as to whom the law was allegedly unconstitutional).) And, the alleged vagueness did not pervade the ordinance to make the entire ordinance invalid, and, therefore, plaintiffs do not have standing under this exception to the standing rule (see *People v. Palkes* (1972), 52 Ill. 2d 472, 480-81, 280 N.E.2d 469 (a court will not consider the validity of a statutory provision at the instance of one who is not directly affected by it unless the unconstitutional feature was so pervasive as to render the entire act invalid)).

■ That "emergency" is not stated to be limited to life-threatening emergencies does not render the ordinance vague, because the applicability of the emergency exemption depends on the particular facts. See *Malibu Auto Parts, Inc. v. Commonwealth of Virginia* (1977), 218 Va. 467, 471-72, 237 S.E.2d 782, 785-86 (the term "emergency" in Sunday closing law was not vague).

■ In addition, sections 9—3(a) and 9—3(d) are not inconsistent because section 9—3(d) refers to the sale of services or labor and not to the sale of products by mercantile establishments as in section 9—3(a).

Plaintiffs next argue that the ordinance violated their equal protection rights on the basis that, because there was no rational relationship between the ordinance and any legitimate government objective, the only discernible purpose was to benefit one business at the expense of another. Plaintiffs specifically argue that: (1) restaurants may sell all kinds of food, but other businesses cannot; (2) manufacturers who use a continuous process and are located more than 200 feet from a residentially zoned parcel may operate but not commercial businesses located in an area farther than 200 feet from a residentially zoned parcel; and (3) the ordinance is not enforced against the Abraham Lincoln Oasis truck stop's gift shop.

■ Legislative bodies are granted discretion in drafting laws that promote the general welfare of their citizens. In *McGowan v. Maryland* (1961), 366 U.S. 420, 425-26, 6 L. Ed. 2d 393, 399, 81 S. Ct. 1101, 1105, it is stated:

> "Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard [of equal protection] is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

The test is whether the difference in treatment is invidious discrimination. *Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 359, 35 L. Ed. 2d 351, 354, 93 S. Ct. 1001, 1003.

■ Restaurants could have been exempted because food is a necessity and because residents could then purchase some food in the Village on Sundays. The purpose of the exemption for manufacturers who use a continuous process could have been to prevent possible harm to

the equipment and products of these manufacturers. The nonenforcement of the ordinance against one business does not violate equal protection. (See *Dauel v. Board of Trustees of Elgin Community College* (7th Cir. 1985), 768 F.2d 128, 131 (unequal enforcement of statute is not unconstitutional unless the inequality has some invidious purpose); *Hameetman v. City of Chicago* (7th Cir. 1985), 776 F.2d 636, 641 (cities are not required to enforce their ordinances thoroughly, and selective and incomplete enforcement of the law is the norm).) It does not appear that the ordinance's purpose was to discriminate against certain businesses, and the ordinance has a rational relationship to the objective of promoting peace and quiet. Plaintiffs have not demonstrated an equal protection violation.

Plaintiffs next argue that the ordinance constituted special legislation for conferring a special benefit or exclusive privilege on a group of persons to the exclusion of others similarly situated. The Illinois Constitution prohibits the passage of a special law when a general law is or can be made applicable. (Ill. Const. 1970, art. IV, §13.) Special legislation confers a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated. (*Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, 137, 414 N.E.2d 458.) The standard for reviewing legislation challenged as special is whether the classification is unreasonable in that it preferentially and arbitrarily includes a class to the exclusion of all the others. (*Illinois Polygraph*, 83 Ill. 2d at 138.) The ordinance's classification of which businesses are permitted to conduct business on Sundays and which items are exempted from the Sunday ban is not unreasonable because the exemptions permit the purchase of some items while serving a goal of promoting a day of peace and quiet.

Plaintiffs argue that the ordinance is an unauthorized use of the police power and a violation of due process. These issues are addressed later in this opinion in connection with appeal number 1—89—2908.

Plaintiffs next argue that the ordinance violated the establishment of religion clause of the Illinois Constitution (Ill. Const. 1970, art. I, §3) because the ordinance attempted to establish a preference for a religious group and a mode of worship without considering whether the prohibitions would protect those who sought to worship free from disturbance. Plaintiffs refer to the mayor's letter as evidence that the purpose of the ordinance was to promote religious observance.

Defendants reply that plaintiffs have no standing to raise the issue because they did not allege membership in any religious group and they cite *Humphrey Chevrolet, Inc. v. City of Evanston* (1955), 7 Ill. 2d 402, 408, 131 N.E.2d 710, which held that plaintiffs had no standing to argue

that a law was unconstitutional for discriminating on the basis of religious beliefs.

■ Plaintiffs do not argue that the ordinance discriminated against their religious beliefs, but that the ordinance acted in a way that preferred a religious group and harmed their businesses. Plaintiffs had standing to make the latter argument. See *McGowan v. Maryland* (1961), 366 U.S. 420, 430-31, 6 L. Ed. 2d 393, 402, 81 S. Ct. 1101, 1108 (one who alleges economic injury because of the State's imposition of religion has standing to argue that a law acted to establish a religion).

■ Most States and many municipalities have Sunday closing laws. As stated in *McGowan v. Maryland* (1961), 366 U.S. 420, 445, 6 L. Ed. 2d 393, 410, 81 S. Ct. 1101, 1115:

> "Sunday Closing Laws, like those before us, have become part and parcel of this great governmental concern wholly apart from their original purposes or connotations. The present purpose and effect of most of them is to provide a uniform day of rest for all citizens; the fact that this day is Sunday, a day of significance for the dominant Christian sects, does not bar the State from achieving its secular goals. To say that the States cannot prescribe Sunday as a day of rest for these purposes solely because centuries ago such laws had their genesis in religion would give a constitutional interpretation of hostility to the public welfare rather than one of mere separation of church and State."

■ The ordinance does not promote a religion but merely promotes the nondisturbance of all lawful pursuits on Sundays, and therefore, it does not violate the establishment clause. (See *McGowan*, 366 U.S. at 442, 6 L. Ed. 2d at 408, 81 S. Ct. at 1113 (that a law's effect merely happens to coincide with religions tenets does not render the law a violation of the establishment clause).) The mayor's belief that the ordinance was necessary to permit worship does not establish that the ordinance promotes a religion.

■ Plaintiffs finally argue that the trial court misapplied the fourteenth amendment (U.S. Const., amend. XIV) because of the allegedly erroneous statement in the memorandum of opinion that the amendment granted great discretion to the States in enacting laws. The trial court correctly referred to the statement in *McGowan* that the fourteenth amendment permitted the States wide discretion in enacting laws that affect some groups differently than others. (*McGowan*, 366 U.S. at 425, 6 L. Ed. 2d at 399, 81 S. Ct. at 1105.) In addition, such an error is not grounds for reversal, because the judgment rather than the reasoning of the trial court is reviewed on appeal. *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9.

II. No. 1—89—3049

Quasi-criminal complaints alleged violations of the ordinance by the following businesses in the Village: George's Amoco Gas Station (Amoco), 958 E. 162nd Street; Calumet Auto/Truck Plaza (Calumet), Route 6 and Calumet Expressway (location also identified as being 162nd and I-94); Kar Kleen Car Wash (Kar Kleen), 155 W. Sibley; and Opyt's Amoco (Opyt's), 17011 South Park.

The Village charged defendants with selling the following items in the Village on the following Sundays: (1) Amoco: (a) popcorn on October 9, 1988; (b) cigarettes on October 30, 1988; (c) pretzels, cigarettes, and rolling papers on December 4, 1988; (d) potato chips on February 5, 1989; (e) "Tostitos chips" on March 19, 1989; (f) Pepsi on May 14, 1989; and (g) cigarettes "over the counter" on July 9, 1989; (2) Calumet: (a) charcoal on October 9, 1988; (b) crackers, cinnamon rolls, and a license plate sign on December 4, 1988; and (c) cigars, cigarettes, and cookies on July 9, 1989; (3) Kar Kleen: (a) Pepsi on February 5, 1989; and (b) Pepsi and automobile washes on March 19, 1989; and (4) Opyt's: (a) potato chips on February 5, 1989; and (b) a jar of salsa on March 19, 1989. The summonses required defendants to appear on particular dates. Defendants filed appearances but no answers. There is no record that defendants entered pleas of not guilty.

The Village filed a motion for judgment on the pleadings on the basis that because of the ruling on September 26, 1989, in a case against Kar Kleen that it violated the ordinance, the doctrine of estoppel by verdict mandated that the trial court had to find defendants guilty as a matter of law. Defendants responded that the Village's motion was inappropriate because: (1) defendants had denied the allegations by their pleas of not guilty; (2) no evidence had been heard; and (3) there were material facts in dispute. Defendants filed a pleading that was both a response to the Village's motion for judgment on the pleadings and their own motion for judgment on the pleadings and argued, *inter alia*, that: (1) the ordinance was a purely arbitrary prohibition and therefore void as an interference with property rights guaranteed by the State and Federal Constitutions; and (2) the ordinance did not classify businesses in relation to a goal of preserving the quiet and order of those at worship on Sundays.

The trial court granted the Village's motion for judgment on the pleadings and denied defendants' motion. Fines of $50 were assessed with supervision.

Defendants argue that the trial court erred in granting the Village's motion for judgment on the pleadings because they had not admitted the

allegations of the complaints and therefore there were genuine issues of material fact. Defendants argue that under Supreme Court Rule 286(a), no answer is necessary in small claims cases and the allegations of a complaint are considered denied when no answer is ordered. (134 Ill. 2d R. 286(a).) The Village argues in response that: (1) the rule did not apply to municipal ordinance prosecutions; (2) during the period between the filing of defendant's appearance and the trial, defendants were not deemed to have denied the allegations by their mere filing of appearances; and (3) although judgment on the pleadings could not be granted if a defendant had not filed an answer because no legal issues had therefore been posed by the pleadings (*Columbia Savings & Loan Association v. Century Title Co.* (1977), 45 Ill. App. 3d 550, 553, 359 N.E.2d 1151), defendants' motion for judgment on the pleadings implicitly admitted the factual basis for the complaints.

Supreme Court Rule 286(a) provides that, if a defendant in a small claims action appears, he need not file an answer unless ordered by the court and that, if an answer is not ordered, the allegations of the complaint will be considered denied and any defense may be proved as if it were specifically pleaded. (134 Ill. 2d R. 286(a).) Supreme Court Rule 286(a) only applies to small claims, which are civil actions based on either tort or contract for money not in excess of $2,500 or for the collection of up to $2,500 in taxes. (107 Ill. 2d R. 281.) An ordinance violation prosecution is not a small claims action as defined by Supreme Court Rule 281 (107 Ill. 2d R. 281), and therefore Supreme Court Rule 286 (134 Ill. 2d R. 286(a)) is not applicable here. The issue then is whether the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1989, ch. 110, pars. 1—101 through 20—105) and the supreme court rules for other than small claims cases applied to these ordinance violation prosecutions.

The supreme court rules apply to all proceedings except to the extent that the procedure in a particular kind of action is regulated by a statute other than the Civil Practice Law (which consists of article II of the Code (Ill. Rev. Stat. 1989, ch. 110, pars. 2—101 through 2—1903), according to section 1—101(b) of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 1—101(b))). (107 Ill. 2d R. 1.) The Civil Practice Law applies to proceedings covered by articles 3 through 19 of the Code (Ill. Rev. Stat. 1989, ch. 110, pars. 3—101 through 19—128) and to matters of procedure not regulated by other statutes which regulate proceedings not covered by the Code. Ill. Rev. Stat. 1989, ch. 110, pars. 1—108(a), (b).

No statute regulates the filing of an answer in an ordinance violation prosecution, and therefore the Civil Practice Law and the su-

preme court rules apply here. See 107 Ill. 2d R. 1; Ill. Rev. Stat. 1989, ch. 110, par. 1—108(b); *City of Danville v. Hartshorn* (1973), 53 Ill. 2d 399, 401-04, 292 N.E.2d 382 (former Civil Practice Act (the Act) (Ill. Rev. Stat. 1969, ch. 110, par. 1 *et seq.*) applied to procedure of ordinance violation proceedings which were quasi-criminal in character but civil in form so that the trial court erred in rejecting a jury demand but it was within the trial court's discretion whether the Act's discovery provisions would apply); *City of Chicago v. Provus* (1969), 115 Ill. App. 2d 176, 188, 253 N.E.2d 182 (civil and not criminal rules apply when a municipality sues for an ordinance violation and seeks to recover a monetary penalty).

The issue then is whether, under the Code, defendants admitted the allegations of the complaints by not filing answers and by filing their cross-motion for judgment on the pleadings. Supreme Court Rule 181(b) required defendants to file an answer or motion no later than 10 days following the day of appearance because the summonses required appearances on specific days. (107 Ill. 2d R. 181(b).) If an allegation other than of damages is not explicitly denied, the allegation is deemed admitted. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—610(b).) The general rule is that a motion or cross-motion for a judgment on the pleadings (Ill. Rev. Stat. 1989, ch. 110, par. 2—615(e)) admits the truth of the facts pleaded by the opposite party. *Pfeil v. Weerde* (1987), 152 Ill. App. 3d 759, 760, 504 N.E.2d 988; *Zipf v. Allstate Insurance Co.* (1977), 54 Ill. App. 3d 103, 108, 369 N.E.2d 252 (cross-motion); *Johnson v. Town of the City of Evanston* (1976), 39 Ill. App. 3d 419, 423, 350 N.E.2d 70 (cross-motion).

Defendants filed one document that was both a response to plaintiffs' motion for judgment on the pleadings and a cross-motion for judgment on the pleadings in which defendants argued that because of the ordinance's unconstitutionality, the complaints had to be dismissed. But defendants could not have intended to admit the facts alleged in the complaints by the mere filing of a motion for judgment on the pleadings because they argued therein that material facts were in dispute. The request that the complaints be dismissed because of the ordinance's unconstitutionality indicates that defendants' motion was incorrectly captioned as a motion for judgment on the pleadings.

We hold that, despite defendants' failure to file answers, defendants' motion did not as a matter of law admit the complaints' allegations because of the motion's clear denial of the allegations and the motion's assertion of the existence of questions of fact.

In addition, because defendants denied the complaints' allegations in their motion for judgment on the pleadings, the trial court erred

in granting the Village's motion for judgment on the pleadings. (See *Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 552-53, 359 N.E.2d 113 (judgment on the pleadings is only appropriate where no questions of fact exist).) The judgment in appeal number 1—89—3049 is reversed, and the cause is remanded.

Defendants next argue that the trial court did not have the power to place them on supervision and that the ordinance violated their due process rights because it bore no rational relationship to any legitimate village objective, because it was vague, and because its numerous exceptions discriminated against non-exempt businesses. These issues are not reached because the judgment has been reversed on other grounds.

III. No. 1—89—2908

The Village brought a quasi-criminal complaint against defendant Robert White (White), agent for Kar Kleen Car Wash (Kar Kleen), on the basis that Kar Kleen violated the ordinance by selling two packs of cigarettes on Sunday, October 30, 1988.

Village police officer Laurence Olsen testified at trial for the Village that on Sunday, October 30, 1988, he purchased cigarettes from Kar Kleen. His understanding was that the ordinance was not enforced against the sale of cigarettes from vending machines.

Robert White testified for defendant that he was the president of Kar Kleen and that on October 30, 1988, Kar Kleen sold on a regular daily basis lottery tickets, pop, gasoline, oil, candy, and cigarettes. The Village objected on the basis of relevancy to defense counsel's direct examination question of when White first became aware of the ordinance. The objection was overruled, and White testified that he first became aware of the ordinance upon his encounter with the police in early 1988.

The Village's objection, apparently made on relevancy grounds, to the subsequent question how the Village made White aware of the ordinance was sustained after defense counsel argued that he wanted to elicit when White had become aware of the ordinance's enforcement and whether White was aware of "any contravening policy" of the Village with respect to the sale of cigarettes. Defense counsel then requested to make an offer of proof and argued that he had not been permitted to advise the court when White had become aware of the ordinance and whether White was aware of any contravening policy. The trial court responded that these facts were irrelevant and denied the offer of proof.

Defendant was found guilty and was fined $100.

Defendant argues that the trial court erred in denying its offer of proof regarding White's knowledge of the policy of partially exempting cigarettes from the ordinance and that White's testimony would have

been how the Village misled him to believe that a sale of cigarettes on Sundays was not prohibited.

Defendant had tried to make an offer of proof of when White had become aware of the ordinance and whether White was aware of the Village's enforcement policy, but defendant did not request to make an offer of proof of how the Village had misled it. Defendant did request to make an offer of proof of White's knowledge of the Village's enforcement policy, but even if the denial of this offer of proof was error, the error was harmless because the affirmative defense of estoppel had been waived by defendant's failure to raise it in an answer. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—613(d); *Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 998, 466 N.E.2d 958 (estoppel is an affirmative defense that must be specially pleaded or it is waived).) The waiver rule also disposes of defendant's argument that the trial court erred in not estopping the Village from enforcing the prohibition of the sale of cigarettes against it.

Defendant argues that his due process rights were violated by the ordinance because it was an unauthorized use of the police power, was vague, and was an unauthorized delegation of legislative authority. Specifically, defendant argues that: (1) the sale of cigarettes is not publicly disruptive if exempted items are being sold at the same stores; and (2) the ordinance infringed on an owner's right to sell property.

A Sunday law prohibiting the operation of only barber shops on Sundays was struck down as unauthorized by the police power in *Eden v. People* (1896), 161 Ill. 296, 43 N.E. 1108, on the basis that one class of businesses was being deprived of property without due process because that business did not affect the public welfare. In *City of Mt. Vernon v. Julian* (1938), 369 Ill. 447, 454-55, 17 N.E.2d 52, a Sunday law that exempted several types of businesses was held to be arbitrary, discriminatory, and an improper exercise of police power because it did not relate to the public welfare. One example that led the court to question how the public welfare was being served was the exemption for confectionary stores but not for grocery stores. *Mt. Vernon*, 369 Ill. at 454.

An ordinance similar to the one at issue in this appeal in providing exemptions for certain items and activities was upheld against a challenge that the exemptions were discriminatory in *Humphrey Chevrolet, Inc. v. City of Evanston* (1955), 7 Ill. 2d 402, 131 N.E.2d 710 (exemptions for works of charity, sale of food or drink for human consumption and activities on seller's premises, and sale of drugs, ice cream, ice, gasoline, oil, or products necessary to meet emergency needs). The court held that the prohibition of certain business activity was within the police power, that an ordinance prohibiting the sale of a commodity was

not discriminatory against particular dealers if all other dealers in the commodity were treated the same way, and that the ordinance's exceptions were not discriminatory or unreasonable. *Humphrey*, 7 Ill. 2d at 405-07.

*Village of River Forest v. Vignola* (1961), 30 Ill. App. 2d 52, 54, 173 N.E.2d 515, held that a River Forest ordinance identical to the Evanston ordinance in *Humphrey* did not violate due process on the basis that *Humphrey* had decided that the ordinance was a valid exercise of police power. The appellate court was reversed on other grounds in an opinion that did not reach the constitutional issues. *Village of River Forest v. Vignola* (1961), 23 Ill. 2d 411, 178 N.E.2d 364.

The Illinois Supreme Court next considered a Sunday law in *Pacesetter Homes, Inc. v. Village of South Holland* (1959), 18 Ill. 2d 247, 163 N.E.2d 464, where at issue was a former Village ordinance that prohibited all business activities and ordinary secular pursuits for gain or profit with exceptions only for medical, dental, and funeral facilities, public transportation, public utilities, and activities necessary for the emergency needs of residents. *Pacesetter* held that a Sunday law which sought to protect worshippers from disturbance and distraction by others was valid, that this protection was the only legitimate purpose of Sunday laws, and that therefore activities otherwise lawful could be prohibited only if they reasonably tended to disturb others in worship. *Pacesetter*, 18 Ill. 2d at 253.

Defendant in *Pacesetter* had not suggested how the ordinary conduct of certain businesses disturbed worshippers or injuriously affected the peace. (*Pacesetter*, 18 Ill. 2d at 254.) The ordinance did not classify businesses with reference to the object to maintain quiet and order and therefore it was arbitrary for prohibiting both harmless and harmful businesses. (*Pacesetter*, 18 Ill. 2d at 255.) The court struck down as unconstitutional as beyond the police power the ordinance, which prohibited business activities with. fewer exceptions than contained in the present ordinance, on the bases that it did not promote the object to maintain the quiet and it prohibited harmless businesses. (*Pacesetter*, 18 Ill. 2d at at 255.) The court. distinguished *Humphrey* (7 Ill. 2d 402) as being less comprehensive because it did not prohibit the dispensing of food and drink or the sale of gasoline and oil. *Pacesetter*, 18 Ill. 2d at 254-55.

The dissent in *Pacesetter* argued that it was a proper legislative function to set aside in each week a day of rest. It distinguished the laws in *Mount Vernon* (369 Ill. 447) and *Eden* (161 Ill. 296) on the basis that they arbitrarily closed certain nondisturbing businesses while permitting others to remain open.

After *Pacesetter*, four United States Supreme Court opinions on Sunday laws were decided. In *McGowan v. Maryland* (1961), 366 U.S. 420, 426, 448, 6 L. Ed. 2d 393, 399, 412, 81 S. Ct. 1101, 1105, 1116-17, the Court upheld, against equal protection, due process and establishment of religion challenges, a State Sunday law that, *inter alia*: (1) prohibited the sale on Sundays of all goods except tobacco products, confectionaries, milk, bread, fruits, gasoline, oils, greases, drugs, medicines, newspapers, and periodicals; (2) provided an exception for a particular county for the sale of food, automobile and boating accessories, flowers, toilet goods, hospital supplies, and souvenirs; and (3) provided an exception in the same county for retail establishments which did not employ more than one person.

In *Two Guys From Harrison-Allentown, Inc. v. McGinley* (1961), 366 U.S. 582, 590-92, 6 L. Ed. 2d 551, 557-58, 81 S. Ct. 1135, 1139-40, the court upheld against equal protection and religious freedom challenges a State Sunday law that made unlawful the retail sale of certain goods, including clothing, furniture, housewares, and jewelry. In *Braunfeld v. Brown* (1961), 366 U.S. 599, 605-06, 6 L. Ed. 2d 563, 567-68, 81 S. Ct. 1144, 1147, the Court upheld the same statute against a challenge that it interfered with the free exercise of religion.

In *Gallagher v. Crown Kosher Super Market of Massachusetts, Inc.* (1961), 366 U.S. 617, 624, 630-31, 6 L. Ed. 2d 536, 540, 544, 81 S. Ct. 1122, 1126, 1129, the Court upheld, against equal protection, establishment of religion, and free exercise of religion challenges, State Sunday closing laws that provided numerous exceptions including the sale of tobacco by certain vendors, the sale of live bait for noncommercial fishing, and the digging of clams.

Two Illinois Supreme Court decisions followed. In *Courtesy Motor Sales v. Ward* (1962), 24 Ill. 2d 82, 87-88, 179 N.E.2d 692, a Sunday closing law that made criminal the operating on Sundays of any place for the purpose of selling automobiles was held to be unconstitutional as special legislation because it did not apply to any other activities and because there was no State interest reasonably served by applying a Sunday closing law to a limited range of activity. The need for observing Sunday as a day of rest was not unique to automobile sellers, and there was no reason that they should be singled out as a class for the purposes of a Sunday closing law. *Courtesy*, 24 Ill. 2d at 86-87.

In *Fireside Chrysler-Plymouth, Mazda, Inc. v. Edgar* (1984), 102 Ill. 2d 1, 7, 464 N.E.2d 275, a State law prohibiting automobile dealers from being open on Sundays was challenged on the grounds of special legislation and the denial of equal protection. The court held that plaintiffs did not overcome the presumption that the classification was rea-

sonable and the law was upheld. (*Fireside*, 102 Ill. 2d at 7.) A strong dissenting opinion argued that the law's constitutionality had been decided adversely in *Courtesy* (24 Ill. 2d 82) and that the State had gone beyond the permissible scope of its police power. *Fireside*, 102 Ill. 2d at 18 (Simon, J., dissenting).

An issue presented is whether the Village ordinance is an unauthorized use of police power because it bars some commercial activities which do not necessarily disturb Sunday worship. Despite the statement by the Illinois Supreme Court four years earlier in *Humphrey Chevrolet, Inc. v. City of Evanston* (1955), 7 Ill. 2d 402, 405, 131 N.E.2d 70, that an ordinance may prohibit certain business activity on Sundays on the basis that Sunday has been observed traditionally as "a day on which the normal, nonessential, nonemergency activity of the business world ceases," *Pacesetter* stated that the only legitimate purpose of a Sunday law was to permit worship free from disturbance (*Pacesetter*, 18 Ill. 2d at 253). But *Pacesetter* conflicts with subsequent United States Supreme Court and Illinois Supreme Court opinions that indicate that a legitimate goal of a Sunday law can be only the promotion of a day of peace. (See *McGowan*, 366 U.S. at 426, 448, 6 L. Ed. 2d at 399, 412, 81 S. Ct. at 1105, 1117 (a legislature could reasonably find that the Sunday sale of exempted commodities was necessary for the enhancement of the recreational atmosphere of Sunday); *Two Guys*, 366 U.S. at 591, 6 L. Ed. 2d at 557-58, 81 S. Ct. at 1140 (it was within the legislative power to conclude that retailers, which were the only prohibited businesses, were particularly disruptive of the intended atmosphere of Sunday in part because of the great volume of motor traffic attracted); *Gallagher*, 366 U.S. at 623, 6 L. Ed. 2d at 540, 81 S. Ct. at 1125 (exempted items could have been found by the legislature to be useful in adding to Sunday's enjoyment or in not detracting from the noncommercial atmosphere); *Braunfeld*, 366 U.S. at 607, 6 L. Ed. 2d at 569, 81 S. Ct. at 1148 (Court could not find a State without the power to provide a weekly respite from all labor and to set one day aside as a day of "rest, repose, recreation and tranquility"); *Courtesy Motor Sales v. Ward* (1962), 24 Ill. 2d 82, 87, 179 N.E.2d 692 (the purpose of a Sunday closing law was to set apart a day of rest).

■■■ The ordinance's prohibition of most commercial activities on Sundays promotes the proper goal of providing one day of peace and quiet. There is inequity in permitting some businesses to sell items which others cannot sell and some arbitrariness in prohibiting the sale of some items when exempt items may be sold at the same stores, but the result is reduced commercial activity, traffic, congestion, and noise. Unlike *People v. Weiner* (1915), 271 Ill. 74, 110 N.E. 870, *People v. Caro-*

*lene Products Co.* (1931), 345 Ill. 166, 177 N.E. 678, *City of Chicago v. Netcher* (1899), 183 Ill. 104, 55 N.E. 707, and *Figura v. Cummins* (1954), 4 Ill. 2d 44, 122 N.E.2d 162, which were cited by defendant, Village businesses were not barred, but were prohibited from engaging in certain commercial activity on one day of the week.

In addition, the ordinance does not have an irrational number of exemptions. See *City of Mt. Vernon v. Julian* (1938), 369 Ill. 447, 454-55, 17 N.E.2d 52 (law was overly arbitrary in excepting several types of businesses (including tobacco stores and confectionary stores); *State v. Anonymous* (1976), 33 Conn. Supp. 141, 145, 366 A.2d 200, 201-02 (irrational and contradictory statute had special interest exceptions, *e.g.*, permitted the sale of pornographic magazines but not of books); *Caldor's Inc. v. Bedding Barn, Inc.* (1979), 177 Conn. 304, 324-25, 417 A.2d 343, 353 (act containing numerous exemptions was arbitrary and discriminatory); *People v. Abrahams* (1976), 40 N.Y.2d 277, 285, 386 N.Y.S.2d 661, 666, 353 N.E.2d 574, 578 (law was devoid of reason because it contained polyglot of exemptions).

We hold that the ordinance is a reasonable exercise of police power. See *Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill. 2d 323, 327, 265 N.E.2d 640 (an enactment is a valid exercise of the police power if it bears a reasonable relation to the public interest sought to be protected and if the means adopted are a reasonable method to accomplish the objective).

■ Defendant does not specifically argue in appeal No. 1—89—2908 why the ordinance is an unlawful delegation of legislative authority, and, therefore, the issue cannot be addressed. (See 113 Ill. 2d R. 341(e)(7) (argument in the brief shall contain the reasons for the contentions, and points not argued are waived).) Defendant also does not specifically argue in appeal No. 1—89—2908 why the ordinance was vague, but the issue has already been addressed earlier in this opinion. The attention of all the appellants is also directed to the following requirements for briefs: double spacing of typed briefs with the text not to exceed 6 inches by 8.5 inches (107 Ill. 2d R. 344(b)); 27-page limit for typed (double-spaced) reply briefs (113 Ill. 2d R. 341(a)); and a statement of jurisdiction (122 Ill. 2d R. 341(e)(4)(ii)).

■ Defendant finally argues that the sale of cigarettes was not an activity that disturbs religious worship and that to prohibit such activity for any other religious purposes violates the establishment clause of the Illinois Constitution (Ill. Const. 1970, art. I, §3). This argument is rejected on the basis that defendant has neither demonstrated how the ordinance served any of these other impermissible religious purposes which are not specified nor has he cited any authority for his position.

The order granting the motion for judgment on the pleadings in appeal number 1—89—3049 is reversed and that cause is remanded. The judgments in appeal numbers 1—89—2908 and 1—89—2691 are affirmed.

Affirmed in part and reversed in part.

·RIZZI and WHITE,* JJ., concur.

---

*Justice Freeman heard the oral argument in this case, and following his election to the supreme court, Justice White was substituted, he listened to the tape of oral argument and read the briefs and record.